IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,

Debtors.

Chapter 11

Bky. No. 20-10343

BOY SCOUTS OF AMERICA,

Plaintiff,

v.

A.S., *et al.*,

Defendants.

Adv. Proc. No. 20-50527

**DEFENDANTS A.S., B.L, C.F., E.B., F.A., K.W., AND N.C.'S FIRST MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUCTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE**

Now come Defendants A.S., B.L, C.F., E.B., F.A., K.W., and N.C. (collectively, "the Kentucky Defendants"), by and through counsel, and provide this First Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code. For the forthcoming reasons, the Kentucky Defendants ask this Court to Deny said motion.

**I.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THIS COURT HAS AUTHORITY TO ENJOIN THE PENDING ABUSE CASES**

Plaintiffs fail to meet their burden of showing that this Court possesses the authority to grant the expansive and unprecedented relief which Plaintiffs seek. In their examination of case law in support of this Court's authority to grant a preliminary injunction against over 275

pending abuse cases, Plaintiffs only produce two citations that concerned sexual abuse of minors. *See Martin v. Catholic Diocese of Wilmington (In re Catholic Diocese of Wilmington)*, 484 B.R. 629 (D. Del. 2012); Order Under Sections 105(a) and 363 of the Bankruptcy Code Extending the Automatic Stay to the Parishes to Prevent the Continuation of Certain Personal Injury Actions, *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (CSS) (Bankr. D. Del. Feb. 4, 2010) (hereafter, "The Diocese of Wilmington Order"). Both of these citations arise out of the same case. Essentially, in their attempt to persuade this Court of its authority to grant the requested relief, Plaintiffs rely on a single case with no precedential value whatsoever.

The facts of the *Catholic Diocese of Wilmington* case, as is the nature of sexual abuse cases, are also unique, limiting the scope of any persuasive value those decisions might have. The court in *Catholic Diocese of Wilmington* faced an injunction which barred eight former priests from receiving pension benefits, not against the injured children seeking relief from the courts for the life-altering injuries and harms to which they were subjected. *Id.* at 634. The bankruptcy court specifically required this injunction to be incorporated into the plan for reorganization: "[u]nder the unique circumstances [of] this case, however, I find that doing so, reserving the right to make payments to the abuser priests while impairing claims of abuse survivors, in asking for that, the debtor is not proposing a plan in good faith and I cannot make an 1129(a)(3) finding that allows that." *Id.* at 633. The court continued, "I'm not going to confirm a plan unless there is some sort of prohibition on that because I don't think the debtor would be operating in good faith." *Id.* Thus, the facts of the injunction in that case are entirely opposite to BSA's motivations behind its request for an injunction.

The injunction in *Catholic Diocese of Wilmington* sought to protect the abused and punish the abusers. Here, the BSA seeks to stall the attempts by the abused defendants to seek

legal redress for the life-long harms inflicted upon them. From the filings that Plaintiffs have made in this Court and the United States District Court for the District of Delaware, it is apparent that Plaintiffs seek to stall claims as a means of coercing the abused defendants into a compromised bargaining position in order for the BSA to walk out of its bankruptcy proceedings with a blank slate.

Plaintiffs also cite an order granting an extension of a stay from the same case - the *Diocese of Wilmington* Order. However, that order is utterly incomparable to this case. In the *Diocese of Wilmington* Order, all parties, including counsel for the abuse victims, agreed to a settlement which included the stipulation of a preliminary injunction expanding the stay to encompass the co-defendant parishes; this preliminary injunction would last 60 days after the deadline for creditors to file prepetition claims. *Id.* at ¶15-16. Further, the *Diocese of Wilmington* Order, while staying prosecution of 73 cases, was limited in scope, affecting only abuse cases in the Superior Court for the State of Delaware. *Id.* at ¶ 10-12. All of these cases were clearly within the jurisdiction of the Delaware Bankruptcy Court because the defendants and cases were all in Delaware and part of the Diocese of Wilmington.

In the present case, the Kentucky Defendants have made no stipulation and granted no consent to this Court's issuance of a preliminary injunction. The granting of a preliminary injunction lasting 180 days would far exceed the time duration of the *Diocese of Wilmington* Order. Further, the size of Plaintiffs' requested preliminary injunction far exceeds that of the *Diocese of Wilmington* Order. Plaintiffs seek to enjoin cases which span nearly half the globe, from Florida to Guam. Such extraordinary relief for sex abuse cases is unprecedented and not supported by the case law cited by Plaintiffs

The remaining cases cited by Plaintiffs throughout their Motion concern products, not

people. *See Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.),* 86 F.3d 482 (6th Cir. 1996) (concerning breast implants); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (concerning contraceptive devices); *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17 (Bankr. D. Del. 2008) (concerning mining operations); *Transcript of August 16, 2017 Hearing, TK Holdings Inc. v. Hawaii (In re TK Holdings Inc.), Adv. No. 17-50880-BLS* (Bankr. D. Del. Aug. 23, 2017) (concerning defective airbags). The Kentucky Defendants, as well as the other Defendants in this adversary case, were not harmed by defective products. They were harmed by people—people in positions of authority over minor children. People who used their authority to deprive children of the sanctity and security of their own bodies, subjecting them to physical abuse for years and emotional harm that will last a lifetime. These are not cases concerning faulty breast implants, asbestos exposure, or bad airbags. These are cases where unique instances of intentional torts were inflicted upon children, forever depriving them of their bodily integrity. A preliminary injunction barring these victims' pursuit of justice is not a remedy this Court should provide.

## II. THIS COURT SHOULD NOT ENJOIN THE PENDING ABUSE ACTIONS AS AGAINST THE BSA RELATED PARTIES

### A. The protections of the automatic stay should not extend to the BSA Related Parties named in the pending abuse actions.

Plaintiffs provide conflicting factual allegations about the relationship between themselves and the BSA Related Parties. Despite their repeated attempts to link themselves to the BSA Related Entities, Plaintiffs state that "[e]ach Local Council is separately incorporated under the non-profit laws of its respective state." Pl. Br. at pg. 2. Likewise, Learning for Life is "a non-stock, non-profit corporation under the laws of the District of Columbia". *Id.* Thus, by their own admission, Plaintiffs acknowledge that the BSA Related Parties are independent organizations who can be sued independently for their own actions.

Plaintiffs claim that the BSA Related Parties share in insurance policies with the Plaintiffs. *Id.* at 11. However, Plaintiffs have not provided complete records of all insurance policies to support this claim. Nor have Plaintiffs provided any evidentiary support, beyond the submission of cursory affidavits, that continuing legal claims against the BSA Related Parties would negatively impact the bankruptcy estate.

Until Plaintiffs can adequately support their claims through evidence, the extraordinary power of a preliminary injunction which spans half the globe and lasts for six months is not justified.

### B. The elements for preliminary injunctive relief are not satisfied.

Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Federal Rules of Bankruptcy grants this Court the power to order a preliminary injunction. In order for this Court to grant a preliminary injunction, four requirements must be met:

> The first requirement is that there be the danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize. Second, there must be a reasonable likelihood of a successful reorganization. Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained. Fourth, the court must consider the public interest; this requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests.

*In re Monroe Well Service, Inc.*, 67 B.R. 746, 752-753, (Bankr. E.D.P.A. 1986). Plaintiffs have failed to satisfy their burden.

### 1. The likelihood of Plaintiffs' successfully restructuring is unknown.

It is unknown of the Plaintiffs will successfully restructure through bankruptcy. There are many questions about Plaintiffs' assets and liabilities that are currently unanswered. Further, it is unclear if their restructuring efforts are occurring in good faith (as was the issue in The *Diocese of Wilmington* Order), as Plaintiffs are attempting to seek bankruptcy protection for a large number of organizations (the Related Entities) while only naming two parties as Debtors in

the bankruptcy: Boy Scouts of America and BSA Delaware, LLC.  Without additional information provided by the Plaintiffs and the Related Entities, Plaintiffs cannot show that their reorganization will be successful.

    **2. The Plaintiffs will not be irreparably harmed if there is not injunctive relief.**

As previously stated, Plaintiffs have failed to produce sufficient evidence by which the Kentucky Defendants, this Court, or any other parties can understand the degree to which Plaintiffs will be harmed if the Pending Abuse Actions are permitted to proceed.  Plaintiffs have not made the entirety of their insurance policies available for evidentiary consideration. Plaintiffs have not explained to this Court what claims for indemnification have been made against them.  Plaintiffs have not quantified what expense or detriment, if any, they will incur of claims against the Related Parties proceed.  Nor have they addressed the availability of the assets of the BSA Related Parties to fulfill judgments.  Simply, Plaintiffs' evidentiary offering is wholly insufficient to support their claim for injunctive relief.

    **3. Abuse victims would suffer from an injunction, and the harm to those victims outweighs any harm to the Plaintiffs**

In the case of the sexual abuse of children, years—even decades—often pass before victims come forward seeking justice. The acts to which they have been subjected and the events which they have witnessed border on the unspeakable. By filing complaints in court, victims seek to take a first step down a long road of much-needed healing by holding accountable those persons and organizations who should have protected them.

Plaintiffs here are asking the Kentucky Defendants and victims like them to halt their search for closure. Plaintiffs would have them wait 180 days with the potential of further delay. Plaintiffs even acknowledge "there is certainly some prejudice involved in asking victims to delay their prosecution of claims against the BSA and the BSA Related Parties". Pl. Br. at pg.

37-38.

As to their own potential for harm, Plaintiffs make clear: "[i]mportantly, while certain policies have been exhausted or settled, **substantial coverage remains available to the BSA Related Parties for bodily injury claims**, including the Pending Abuse Actions." *Id.* at 29. Local Councils have also stated that they possess significant assets, independent of Plaintiffs' assets. *See* Ben Tobin, *Boy Scouts of America files for bankruptcy. Are Louisville council's assets safe?*, Courier Journal (Feb. 18, 2020), attached as Exhibit A ("In Louisville, the Lincoln Heritage Council is stressing that it is an independent nonprofit that manages its own finances and assets without assistance from the national organization. 'Our program is thriving, safe and will continue uninterrupted, regardless of any announcement by the National BSA,' Jason Pierce, the council's scout executive and CEO, told The Courier Journal…The Lincoln Heritage Council's properties include three camps – the Tunnel Mill Scout Reservation in Charlestown, Indiana; the Harry S. Frazier, Jr. Scout Reservation near Shepherdsville, Kentucky; and Phil Pfeiffer Scout Reservation in Benton, Kentucky – and all asset and finances are managed by the Lincoln Heritage Council board of directors. We believe the real property held by the local councils may be worth significantly more than the Boy Scouts' assets"). Plaintiffs cannot state with any certainty that there would be any impact on the bankruptcy estate if claims against the Related Parties continued.

Thus, with the existence of significant insurance coverage and significant independent assets in the possession of the BSA Related Parties, the likelihood of harm to the Kentucky Defendants and other victims far outweighs any harm the Plaintiffs would potentially suffer.

   **4. The public interest favors denying the requested injunctive relief**

The Kentucky Defendants ask this Court to acknowledge that we are currently living in

an era in which accountability for sexual assault and molestation is in the forefront of the public consciousness. With social activist movements like #metoo and high publicity rape cases like that of Harvey Weinstein as front-page news in every media outlet in the country, the American people have publicly taken a stand against sexual assault. States have begun changing their laws, extending the statutes of limitation to permit prosecution of abusers by victims. *See* Sara Begley, Jeremy Sternberg and Dana Feinstein, *3 States Extend Statute of Limitations on Sexual Assault, Abuse, Harassment Claims*, (Dec. 20, 2019), attached as Exhibit B. Granting Plaintiffs' request for a preliminary injunction risks turning back the clock on these social movements. The public is not served by any delay in the prosecution of civil claims against individuals or organizations who are liable for sex abuse.

### III.   THE REQUESTED INJUNCTIVE RELIEF WOULD NOT BE A PROPER EXERCISE OF THIS COURT'S RELATED-TO JURISDICTION

As previously stated, Plaintiffs have not yet established that this Court does in fact have jurisdiction over the Kentucky Defendants or other Defendants outside the state of Delaware. Further, because Plaintiffs' justification for this Court's related-to jurisdiction under 28 U.S.C. §1334(b) rests on the same arguments previously addressed in this Memorandum in Opposition, the Kentucky Defendants reassert the arguments raised in sections I and II of this Memorandum. Moreover, in this Circuit, "[c]ourts finding 'related to' jurisdiction over claims against non-debtors based in part on shared insurance policies have relied not only on extensive record findings regarding the terms and operation of the subject policies, but also on additional evidence of automatic liability against the debtor." *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 226 (3d Cir. 2004), *as amended* (3d Cir. 2005). There has definitely not been extensive evidence placed into the record with regard to any shared insurance policies that the BSA has with the Related Parties.

### IV. DISCOVERY SHOULD BE PERMITTED BEFORE A PRELIMINARY INJUNCTION IS ISSUED.

In support of their request for an injunction, Plaintiffs filed a few conclusory Affidavits that reference unattached documents and make generalized statements about Plaintiffs' affairs. Although Plaintiffs produced some insurance policies in effect in 1971, 1972, 1974, 1991 and 1992, there are numerous insurance policies that were not provided. This includes the insurance policies in effect during the years in which the Kentucky Defendants were abused – 2008 to 2013. Moreover, besides a conclusory statement from a bankruptcy consultant for the Plaintiffs, there has been no evidence submitted to this Court showing that claims against the Related Parties will have any effect on the insurance coverage available to the Plaintiffs in the bankruptcy. Nor has there been any evidence presented to this Court other than a conclusory affidavit showing what effect, if any, continued litigation by the abuse victims against the Related Parties will have on the Plaintiffs.

Before this Court enjoins the abuse victims' claims against non-debtors, or makes any decision with regard to an injunction, the Kentucky Defendants request that this Court allow for discovery to proceed as to Plaintiffs' arguments in support of its request for an injunction. This would include discovery as to (1) Plaintiffs' claims that it shares insurance coverage with the Related Parties and that allowing the abuse victims to proceed against the Related Parties would adversely affect the Plaintiffs; (2) Plaintiffs' claims that it could be required to indemnify the Related Parties; and (3) Plaintiffs' claims that allowing litigation to continue against the Related Parties would require Plaintiffs to allocate human resources to manage or participate in the litigation, even though the litigation against the Plaintiffs has been stayed.

As a matter of fairness, the Kentucky Defendants should be permitted the opportunity to conduct discovery before their claims against the Related Parties in the Western District of

Kentucky are subject to a preliminary injunction by this Court. The Kentucky Defendants have moved this Court for an Order allowing for such expedited discovery to occur prior to the March 24, 2020 hearing. Alternatively, the Kentucky Defendants ask that this Court continue the March 24, 2020 hearing on Plaintiffs' Motion for a Preliminary Injunction to a later date to allow all adverse parties in the Adversary Proceeding to answer or move in response to Plaintiffs' Verified Complaint and conduct appropriate discovery.

## CONCLUSION

For the foregoing reasons, the Kentucky Defendants request that this Court deny Plaintiff's Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code. Plaintiffs have failed to meet their burden of persuasion in demonstrating that this Court has the authority to grant the relief requested. The balancing of equities disfavors granting a preliminary injunction and is likely to cause significant harm to victims of the Pending Abuse Actions. This Court should, therefore, deny Plaintiffs' request.

Alternatively, this Court should deny Plaintiffs' Motion for a Preliminary Injunction until sufficient discovery has been undertaken by Defendants to address Plaintiffs' arguments regarding insurance, indemnification and burden, at which time Plaintiffs' Motion for Preliminary Injunction can be fully addressed by the Kentucky Defendants and any other Defendant that chooses to raise objections.

Respectfully submitted,
*/s/Raeann Warner*
Raeann Warner, Esq. (# 4931)
Thomas C. Crumplar, Esq. (#942)
Jacobs & Crumplar, P.A.
750 Shipyard Dr., Suite 200
Wilmington, DE  19801
(302) 656-5445
raeann @jcdelaw.com
tom@jcdelaw.com

**TAD THOMAS**
**LOUIS SCHNEIDER**
**Thomas Law Offices**
9418 Norton Commons Blvd., Ste. 200
Louisville, Kentucky 40059
(502) 688-5051
tad@thomaslawoffices.com
lou.schneider@thomaslawoffices.com
*Counsel for Defendants A.S., B.L, C.F.,*
*E.B., F.A., K.W.,* and *N.C.*

## PROOF OF SERVICE

I, Raeann Warner, attorney for Defendant A.S., *et al.*, declare that on March 10, 2020, I served THE KENTUCKY DEFENDANTS' FIRST MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION via the court's CM/ECF server.

s/ Raeann Warner
**RAEANN WARNER**