EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

M.R.,

                              Plaintiff,

      -against-

BOY SCOUTS OF AMERICA; NATIONAL BOY
SCOUTS OF AMERICA FOUNDATION; SCOUTS
BSA; GREATER NEW YORK COUNCILS, BOY
SCOUTS OF AMERICA; GREATER NEW YORK
COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF
AMERICA; DIOCESE OF BROOKLYN; ST.
BENEDICT JOSEPH LABRE CHURCH; ST.
BENEDICT JOSEPH LABRE SCHOOL; and JAMES T.
GRACE JR.

                            Defendants.

-------------------------------------------------------------------X

**SUMMONS**

**Index No.:** 522910 /19
**Date Purchased:** 10/21 /19

Plaintiff's designates Kings County
as the place of trial.

The basis of venue is:
Principal Place of Business of
defendant Diocese Of Brooklyn

**County of New York**

The principal place of business of
defendant Diocese Of Brooklyn is
310 Prospect Park West
Brooklyn, NY 11215

## To the above named Defendants:

    **You are hereby summoned** to answer the complaint in this action, and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the plaintiff's attorneys, within twenty days after the service of this summons
exclusive of the day of service, where service is made by delivery upon you personally within
the state, or within 30 days after completion of service where service is made in any other
manner. In case of your failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

Dated: Brooklyn, New York
      October 21, 2019

                            John Bonina, Esq.
                            BONINA & BONINA, P.C.
                            Attorneys for Plaintiff
                            16 Court Street, Suite 1800
                            Brooklyn, New York 11241
                            Phone No.: (718) 522-1786

{00164062}

TO:

Boy Scouts of America
1325 West Walnut Hill Lane
Irving, TX 75015

National Boy Scouts of America Foundation
1325 West Walnut Hill Lane
Irving, TX 75015

Scouts BSA
1325 West Walnut Hill Lane
Irving, TX 75015

Greater New York Councils, Boy Scouts of America
475 Riverside Drive Suite 600
New York, NY 10115

Greater New York Councils, Queens Council, Boy
Scouts of America
475 Riverside Drive Suite 600
New York, NY 10115

Diocese of Brooklyn
310 Prospect Park West
Brooklyn, NY 11215

St. Benedict Joseph Labre Church
94-40 118th Street
South Richmond Hill, NY 11418

St. Benedict Joseph Labre School
94-40 118th Street
South Richmond Hill, NY 11418

James T. Grace Jr.
180 Thacker Road
Rural Hall, NC 27045-9629

{00164062}

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------X
M.R.,

                              Plaintiff,

    -against-

BOY SCOUTS OF AMERICA; NATIONAL BOY SCOUTS          **VERIFIED COMPLAINT**
OF AMERICA FOUNDATION; SCOUTS BSA; GREATER
NEW YORK COUNCILS, BOY SCOUTS OF AMERICA;
GREATER NEW YORK COUNCILS, QUEENS COUNCIL,
BOY   SCOUTS   OF   AMERICA;   DIOCESE   OF          **Index No.: 522910/2019**
BROOKLYN; ST. BENEDICT JOSEPH LABRE CHURCH;
ST. BENEDICT JOSEPH LABRE SCHOOL; and JAMES T.
GRACE JR.

                              Defendants.
-----------------------------------------------------------------------X

Plaintiff, by and through his attorneys, BONINA & BONINA, P.C., complaining of the

defendants herein, as and for his Verified Complaint in the above entitled action, respectfully

shows to this Court, and alleges upon information and belief, as follows:

1.      That prior to the service of this Summons & Complaint, plaintiff has purchased

Index Number ___522910___ /19 from the Supreme Court of the State of New York, County

of Kings, in accordance with the requirements of the CPLR.

2.      This case falls within one or more of the exceptions to CPLR 1602.

## **NATURE OF THE ACTION**

3.      This is a case brought by M.R., who was a member of the Cub Scouts and the Boy

Scouts Troop 273 in South Richmond Hill, New York, during the time that defendant James T.

Grace Jr. was Scout Master.  Plaintiff M.R. was also a member and parishioner of defendant St.

{00164060}

Benedict Joseph Labre Church, and a student at defendant St. Benedict Joseph Labre School, through which defendant James T. Grace Jr. gained access to young boys, including plaintiff M.R., through their Catholic Youth Organization (CYO) sports programs.

4.     As a boy between the ages of seven and eighteen, plaintiff and his family placed their trust in defendants, participating in their Cub Scouts and Boy Scouts programs as well as their CYO Sports Programs. The defendants violated that trust by sexually and emotionally abusing M.R. and others like him, whose care, safety and personal development had been entrusted to them, and by permitting such abuse to occur on their watch.

5.     With the passage of the Child Victims Act, those who have endured such abuse need no longer be silent. The Child Victims Act revives previously barred claims (see CPLR 214-g), creating a one year window within which to file such claims beginning August 14, 2019. As such, this claim is timely.

**THE PARTIES**

6.     At all times mentioned herein, Defendant BOY SCOUTS OF AMERICA was and is a congressionally chartered corporation with headquarters in Irving, Texas.

7.     At all times mentioned herein, Defendant BOY SCOUTS OF AMERICA was and is authorized to do business in New York, and does business in New York.

8.     At all times mentioned herein, Defendant NATIONAL BOY SCOUTS OF AMERICA FOUNDATION was and is a congressionally chartered corporation with headquarters in Irving, Texas.

9.     At all times mentioned herein, Defendant NATIONAL BOY SCOUTS OF AMERICA FOUNDATION was and is authorized to do business in New York, and does business in New York.

10.     At all times mentioned herein, Defendant SCOUTS BSA was and is a congressionally chartered corporation with headquarters in Irving, Texas.

11.     At all times mentioned herein, Defendant SCOUTS BSA was and is authorized to do business in New York, and does business in New York.

12.     At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA was and is a New York corporation, organized under and existing by virtue of the laws of the State of New York.

13.     At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA was and is a not for profit corporation, organized under and existing by virtue of the laws of the State of New York.

14.     At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA, was and is an organization operating in and doing business in the State of New York.

15.     At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA was and is a New York corporation, organized under and existing by virtue of the laws of the State of New York.

16.     At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA was and is a not for profit corporation, organized under and existing by virtue of the laws of the State of New York.

17.     At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA, was and is an organization operating in and doing business in the State of New York.

{00164060}

3

18.    At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA was and is under the supervision of and granted certain powers duties and obligations by, defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA.

19.    At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA was and is licensed to operate by defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA.

20.    At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA was and is authorized to operate the Boy Scouts organizations in the City of New York, by defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA.

21.    At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA was and is under the supervision of and granted certain powers duties and obligations by, defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, SCOUTS BSA, and/or GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA.

22.    At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA was and is licensed to operate by defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, SCOUTS BSA, and/or GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA.

{00164060}

4

23. At all times mentioned herein, Defendant GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA was and is authorized to operate the Boy Scouts organizations in the City of New York, by defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, SCOUTS BSA, and/or GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA.

24. Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN was and still is a religious corporation duly organized under and existing by virtue of the laws of the State of New York.

25. Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN was and still is a not for profit corporation duly organized under and existing by virtue of the laws of the State of New York.

26. Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN was and still is a religious organization operating within the State of New York.

27. Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN was and still is a religious organization doing business within the State of New York.

28. Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN owned ST. BENEDICT JOSEPH LABRE CHURCH, located in Richmond Hill, New York.

29. Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN operated ST. BENEDICT JOSEPH LABRE CHURCH, located in Richmond Hill, New York.

Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 9 of 95

30.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN maintained ST. BENEDICT JOSEPH LABRE CHURCH, located in Richmond Hill, New York.

31.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN supervised ST. BENEDICT JOSEPH LABRE CHURCH, located in Richmond Hill, New York.

32.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN controlled ST. BENEDICT JOSEPH LABRE CHURCH, located in Richmond Hill, New York.

33.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN held itself  out as owning, operating, maintaining, supervising and/or controlling ST. BENEDICT JOSEPH LABRE CHURCH, located in Richmond Hill, New York.

34.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN owned ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

35.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN operated ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

36.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN maintained ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 10 of 95

37.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN supervised ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

38.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN controlled ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

39.     Upon information and belief, at all times mentioned herein, Defendant DIOCESE OF BROOKLYN held itself  out as owning, operating, maintaining, supervising and/or controlling ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

40.     Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH was and still is a religious corporation duly organized under and existing by virtue of the laws of the State of New York.

41.     Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH was and still is a not for profit corporation duly organized under and existing by virtue of the laws of the State of New York.

42.     Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH was and still is a religious organization operating within the State of New York.

43.     Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH was and still is a religious organization doing business within the State of New York.

44.    Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH owned ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

45.    Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH operated ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

46.    Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH maintained ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

47.    Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH supervised ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

48.    Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH controlled ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

49.    Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE CHURCH held itself out as owning, operating, maintaining, supervising and/or controlling ST. BENEDICT JOSEPH LABRE SCHOOL, located in Richmond Hill, New York.

50.    Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE SCHOOL was and still is a corporation duly organized under and existing by virtue of the laws of the State of New York.

51.     Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE SCHOOL was and still is a not for profit corporation duly organized under and existing by virtue of the laws of the State of New York.

52.     Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE SCHOOL was and still is a school operating within the State of New York.

53.     Upon information and belief, at all times mentioned herein, Defendant ST. BENEDICT JOSEPH LABRE SCHOOL regularly conducted business within the State of New York.

54.     Upon information and belief, defendant JAMES T. GRACE JR. is currently a resident of the Town of Rural Hall, Forsyth County, State of North Carolina.

55.     From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, defendant JAMES T. GRACE JR. was resident of the County of Queens, City and State of New York.

56.     From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, defendant JAMES T. GRACE JR. was affiliated with Boy Scouts Troop 273, located in Richmond Hill, Queens, New York.

57.     From 1978 through 1986, defendant JAMES T. GRACE JR. was the Scoutmaster for Boy Scouts Troop 273, as well as Cub Scouts Pack 273, located in Richmond Hill, Queens, New York.

58.     For several years prior to 1978 defendant JAMES T. GRACE JR. was the assistant Scoutmaster for Boy Scouts Troop 273, as well as Cub Scouts Pack 273, located in Richmond Hill, Queens, New York.

{00164060}

9

59. From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, Boy Scouts Troop 273 as well as Cub Scouts Pack 273 operated within the confines of and on the premises of ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL, with the permission, consent and approval of ST. BENEDICT JOSEPH LABRE CHURCH, ST. BENEDICT JOSEPH LABRE SCHOOL and the DIOCESE OF BROOKLYN.

60. Defendants ST. BENEDICT JOSEPH LABRE CHURCH, ST. BENEDICT JOSEPH LABRE SCHOOL and the DIOCESE OF BROOKLYN had the ability and the authority to control the activities of Boy Scouts Troop 273 as well as Cub Scouts Pack 273, and defendant JAMES T. GRACE JR.

61. Defendants BOY SCOUTS OF AMERICA; NATIONAL BOY SCOUTS OF AMERICA FOUNDATION; SCOUTS BSA; GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA; and GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA, had the ability and the authority to control the activities of Boy Scouts Troop 273 as well as Cub Scouts Pack 273, and defendant JAMES T. GRACE JR.

62. From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, defendant JAMES T. GRACE JR. was affiliated with ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL, as well as their CYO Sports programs in several capacities including as a coach.

63. Defendants DIOCESE OF BROOKLYN, ST. BENEDICT JOSEPH LABRE CHURCH, and ST. BENEDICT JOSEPH LABRE SCHOOL, had the ability and the authority to control the activities of defendant JAMES T. GRACE JR. in his capacity as a CYO coach.

64. From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, defendant JAMES T. GRACE JR. used his affiliation, relationship and positions with the Boy Scouts and Cub Scouts, and with ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL and their CYO Sports programs, to gain access to underage boys including but not limited to plaintiff M.R., who he would then sexually abuse.

65. Plaintiff M.R. is currently a resident of Bellmore, County of Nassau, State of New York

66. From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, plaintiff M.R. was a resident of Richmond Hill, County of Queens, City and State of New York

67. From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, plaintiff M.R. participated in Cub Scouts Pack 273 and Boy Scouts Troop 273, located at ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL.

68. From 1977 through 1982, and for a considerable period of time prior and subsequent thereto, plaintiff M.R. participated in the CYO Sports Program and teams of ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL.

69. From 1977 through 1982, defendant JAMES T. GRACE JR. repeatedly sexually abused plaintiff M.R.

## THE FACTS

70. Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA (collectively referred to hereinafter as "Boy

{00164060}                                  11

Case 20-50527-LSS   Doc 112-1   Filed 11/05/20   Page 15 of 95

Scouts") operate and oversee one of the largest youth organizations in the United States, and select and approve adult leaders to serve as Scoutmasters and hold other leadership positions.

71.     Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA retain the right to control the details and the means and methods of scout leaders' interactions with individual scouts.

72.     Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA are and were responsible for operating, maintaining and overseeing local organizations, troops and chapters of the Boy Scouts, and are and were ultimately responsible for the approval and assignment of Scoutmasters, scout leaders and volunteers, as well as implementation of policies and procedures, including policies relating to the safety of children and the prevention of childhood sexual abuse.

73.     Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA established and controlled Boy Scouts' policy concerning membership qualification and admittance to the organization, and grant charters to local councils which carry out the business of the Boy Scouts on a regional basis.

74.     Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA authorized local councils and local organizations to charter, sponsor, and operate Boy Scout Troops, Cub Scout Troops and other types of Troops throughout New York, including plaintiff's troop, Troop 273, located in Richmond Hill, County of Queens, City and State of New York.

75.     Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA, collectively with the local councils including but not limited to Defendants GREATER NEW YORK COUNCILS, BOY SCOUTS

OF AMERICA and GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY

SCOUTS OF AMERICA, would collectively select the leaders and volunteers each Boy Scout

Troop and Cub Scout Troop and/or Pack in New York.

76.     Additionally, said defendants would collectively select the leaders, counselors and

volunteers of each Boy Scout Camp, including but not limited to Alpine Scout Camp in Alpine,

NJ; Ten Mile River Scout Camps in Narrowsburg, NY; and Camp Conron in Holmes, NY.

77.     Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF

AMERICA FOUNDATION, and/or SCOUTS BSA retained and exercised the ultimate authority

to decide who could be a Scoutmaster, assistant Scoutmaster, leader or volunteer with any Boy

Scout Troop, Cub Scout Pack or Boy Scout Camp.

78.     In exchange for use of the Boy Scouts' name, programming and endorsement, the

leaders, volunteers and members of every Boy Scout Troop, Cub Scout Pack or Boy Scout

Camp, including Troop 273 and Pack 273, would pay an annual membership fee to defendants

BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION,

and/or SCOUTS BSA.

79.     In exchange for the opportunity to participate in the Boy Scouts' programming

and activities, the child members of every Boy Scout Troop, Cub Scout Pack and/or Boy Scout

Camp, including Troop 273 and Pack 273, and/or their parents or guardians on their behalf,

would pay an annual membership fee to defendants BOY SCOUTS OF AMERICA,

NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA.

80.     Starting in the early 1900's the Boy Scouts knew that its Scoutmasters, scout

leaders, volunteers and members were using their positions to sexually abuse children.

81.     By 1935, the Chief Scout Executive of the Boy Scouts acknowledged the nature of the sexual abuse epidemic within the Boy Scouts, acknowledging that 1,000 men had already been removed from positions in the Boy Scouts because they "undertake to deal with sex matters and become morbid on the subject and sometimes give way to temptation and develop practices which make them degenerates."

82.     Well before 1977, the Boy Scouts were aware of the sexual abuse epidemic within their ranks, having removed thousands of sexual abusers and in fact having created a list of "Ineligible Volunteers" (also known as the Perversion Files), yet they failed to take appropriate action to ensure that an end was put to the abuse.

83.     As a result of this epidemic of sexual abuse within the Boy Scouts, as well as the Boy Scouts' maintenance of its list of "Ineligible Volunteers" (also known as the Perversion files), the Boy Scouts were aware of the behavioral characteristics and grooming techniques of the pedophiles and child molesters who continued to join the Boy Scouts at alarming levels, to gain access to child victims.

84.     As a result of this epidemic of sexual abuse within the Boy Scouts, the Boy Scouts knew or should have known of the danger that pedophiles presented to children participating in their programs, long before plaintiff suffered abuse.

85.     Despite decades of knowledge that it's scouting program was a magnet for child molesters, the Boy Scouts failed to take reasonable steps to protect children from being sexually abused, failed to take reasonable steps to root out pedophiles from their leadership positions, and failed to take reasonable steps to ensure that pedophiles did not have access to children through the Boy Scouts' programs.

Case 20-50527-LSS   Doc 112-1   Filed 11/05/20   Page 18 of 95

86.     From 1977 through 1982 and for a considerable period of time prior and subsequent thereto, the Boy Scouts Troop 273 and Cub Scouts Pack 273 operated upon and within the premises of Defendants ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL.

87.     Well before 1977, Defendants DIOCESE OF BROOKLYN, ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL were aware and/or should have been aware that defendant JAMES T. GRACE JR. had had inappropriate contact with and inappropriate relations with children.

88.     Well before 1977, Defendants BOY SCOUTS OF AMERICA, NATIONAL BOY SCOUTS OF AMERICA FOUNDATION, and/or SCOUTS BSA, as well as defendants GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA and GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA, were aware and/or should have been aware that defendant JAMES T. GRACE JR. had had inappropriate contact with and inappropriate relations with children.

89.     Well before 1977, Defendants and/or each of them knew or should have known of JAMES T. GRACE JR.'s tendencies to abuse children, as he frequently sought to be alone with children on their grounds.

90.     Well before 1977, Defendants and/or each of them knew or should have known of JAMES T. GRACE JR.'s tendencies to abuse children, as he frequently wrestled with young boys, at which time he would put his hands down their pants.

91.     In 1975, two years before defendant JAMES T. GRACE JR. began to sexually abuse and molest plaintiff M.R., Father Smith of ST. BENEDICT JOSEPH LABRE CHURCH

and ST. BENEDICT JOSEPH LABRE SCHOOL was advised that JAMES T. GRACE JR. had abused and had inappropriate contact with children.

92.    Despite knowledge of the above, defendants took no steps whatsoever to remove JAMES T. GRACE JR. (hereinafter referred to as "Grace") from his positions with the Boy Scouts and Cub Scouts, and with the ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL CYO sports programs, thus permitting him to continue to have access to children, including but not limited to Plaintiff M.R..

93.    From approximately 1977 through 1987, Plaintiff M.R. was a member of and a participant in Cub Scouts Pack 273 and Boy Scouts Troop 273.

94.    From approximately 1977 through 1987, Plaintiff M.R. was a member of ST. BENEDICT JOSEPH LABRE CHURCH and a participant in its CYO Sports Programs.

95.    From approximately 1977 through 1982, defendant Grace, through his leadership positions in the Boy Scouts as well as his position as a coach in the ST. BENEDICT JOSEPH LABRE CHURCH CYO Sports Programs, had unfettered access to Plaintiff M.R..

96.    From approximately 1977 through 1982, defendant Grace, through his leadership positions in the Boy Scouts, often took M.R. to Boy Scouts camps, including Ten Mile River, Camp Conron, and Alpine Scout Camp alone, before the other campers and staff arrived, to be alone with him.

97.    From approximately 1977 through 1982, defendant Grace repeatedly sexually abused M.R. on approximately 750 to 1,000 occasions in various locations, including but not limited to the premises of ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL, as well as Ten Mile River, Camp Conron, and Alpine Scout Camp, and other locations.

{00164060}

16

98.     The sexual abuse included Grace performing oral sex upon M.R. and asking for

M.R. to perform oral sex upon him in return, tickling and touching of M.R.'s genitals, and

forcible touching of M.R.'s genitals and buttocks.

99.     At the time he was subjected to this sexual abuse, M.R. was between the ages of

seven and twelve years old.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF**
**PLAINTIFF M.R. BASED UPON A THEORY**
**OF STATUTORY LIABILITY AS AGAINST ALL DEFENDANTS**

100.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation

contained in of the Complaint set forth in paragraphs "FIRST" through "NINETY-NINTH"

inclusive with the same force and effect as though said allegations were herein fully set forth at

length.

101.    The conduct of defendants, and/or each of them, and/or their agents, servants,

employees and/or staff, constituted violations of Article 130 of the Penal Law of the State of

New York and/or its predecessor statutes.

102.    The conduct of defendants, and/or each of them, and/or their agents, servants,

employees and/or staff, constituted violations of Article 130 of the Penal Law of the State of

New York, including but not limited to violations of Penal Law Sections 130.00, 130.05, 130.20,

130.40, 130.45, 130.50, 130.52, 130.55, 130.60, 130.65, 130.75, 130.80, 130.95, and 130.96.

103.    The conduct of defendants, and/or each of them, and/or their agents, servants,

employees and/or staff, constituted violations of Article 260 of the Penal Law of the State of

New York and/or its predecessor statutes, including but not limited to 260.10.

104.    That the subject sexual offenses were committed forcibly by the defendants and/or their agents, servants, staff, and/or employees against the plaintiff, who was a minor, while under defendants' custody, supervision and/or control.

105.    That as a result of the statutory violations of the Defendants herein, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the Plaintiff M.R. endured sexual abuse and molestation, as well as emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering and emotional distress, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

106.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an amount in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the Defendants herein.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF M.R. BASED UPON A THEORY OF NEGLIGENCE AS AGAINST ALL DEFENDANTS

107.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED AND SIXTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

108.    While M.R. was in the custody of and under the care and supervision of defendants and/or each of them from approximately 1977 to 1982, defendants stood in the place of M.R.'s parents (in loco parentis), and as such were responsible for his care, well-being, and

{00164060}                                    18

Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 22 of 95

safety amongst other things, and had a duty to protect him from harm, abuse, assault and other harms, including but not limited to sexual abuse and sexual assaults.

109.    From approximately 1977 to 1982 defendants had a duty to care for the welfare and well-being of M.R. as if they were his parents, and to protect him from harm, abuse, assault and other harms, including but not limited to sexual abuse, as well as physical and emotional abuse.

110.    Defendants breached their duty of care with respect to M.R.

111.    Defendants breached their duty to care for M.R., failed to properly carry out their duty to stand in the place of her parents, and were negligent, careless and reckless in failing to protect him from harm, abuse, assault and other harms, including but not limited to sexual abuse and assaults, as well as physical and emotional abuse.

112.    Defendants had both actual and constructive notice of the sexual abuse and emotional abuse of children which had taken place in the Boy Scouts and Cub Scouts for decades, as well as the specific sexual abuse perpetrated by defendant Grace, and failed to institute appropriate measures to stop the abuse.

113.    That as a result of the negligence and breach of duty of defendants, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the Plaintiff M.R. endured sexual abuse and molestation, as well as emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

114.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an amount in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the Defendants herein.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF M.R. BASED UPON A THEORY OF NEGLIGENT SUPERVISION AS AGAINST ALL DEFENDANTS

115.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED AND FOURTEENTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

116.    While M.R. was under the care, custody, control, and supervision of defendants and/or each of them from approximately 1977 to 1982, defendants had a duty to supervise M.R., and to protect him from harm, abuse, assault and other harms, including but not limited to sexual assaults as well as emotional abuse, and were responsible for his care, well-being, and safety amongst other things.

117.    Defendants breached their duty to properly supervise M.R., failed to properly carry out their duty to supervise him in his activities, and were negligent, careless and reckless in failing to properly supervise him and in failing to adequately protect him from harm, abuse, assault and other harms, including but not limited to sexual abuse and assault, as well as emotional abuse.

118.    That as a result of this negligent supervision and breach of duty of defendants, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the Plaintiff M.R. endured sexual abuse and molestation, as well as emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant

Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 24 of 95

conscious pain and suffering, including psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

119.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an amount in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the Defendants herein.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF
PLAINTIFF M.R. BASED UPON A THEORY OF NEGLIGENT HIRING, RETENTION
AND SUPERVISION AS AGAINST ALL DEFENDANTS**

120.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED AND NINETEENTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

121.    Defendants and/or each of them had a duty to conduct appropriate and proper hiring, screening, and retention practices to prevent the hiring and retention of those who may pose a risk of harm, including but not limited to sexual abuse as well as emotional abuse, to minors who had been entrusted to their care, custody, supervision and control.

122.    Defendants and/or each of them had a duty to adequately and properly supervise those whom they did hire and/or retain in a reasonably prudent fashion, to prevent those they hired, retained and/or accepted as volunteers from becoming a risk of harm, including but not limited to sexual abuse as well as emotional abuse, to those minors who had been entrusted to their care, custody, supervision and control including the plaintiff herein.

{00164060}                                    21

123.    Defendants and/or each of them had a duty to prevent known risks of harm, and to prevent their staff and/or volunteers from inflicting harm upon the children who had been entrusted to them including the plaintiff herein.

124.    Defendants and/or each of them had a duty to adequately supervise their staff and/or volunteers so as to ensure the safety and well-being of the children who had been entrusted to them including the plaintiff herein.

125.    Defendants and/or each of them had a duty to adequately supervise their staff and/or volunteers so as to ensure that they carried out their duties in a manner which reduced and/or eliminated the risk of harm, including but not limited to sexual abuse as well as emotional abuse, to those who had been entrusted to their care, custody, supervision and control including the plaintiff herein.

126.    Defendants and/or each of them had a duty to adequately supervise their staff and/or volunteers so as to ensure that they did not sexually abuse and/or emotionally abuse, those who had been entrusted to their care, custody, supervision and control including the plaintiff herein.

127.    Defendants breached their duty to conduct their hiring and retention practices in a reasonably prudent fashion, and to adequately and properly supervise their staff and/or volunteers, including but not limited to defendant Grace, in a reasonably prudent fashion.

128.    Defendants were negligent, careless and reckless in the manner in which they conducted their hiring and retention of staff, including but not limited to defendant Grace, and hired and retained volunteers, scout leaders, Scoutmasters and coaches who both permitted and promoted a culture of abuse, and had a history of abusing those whom they were supposed to coach, care for, mentor and serve.

{00164060}

129.    Defendants were negligent, careless and reckless in the manner in which they supervised their staff and/or volunteers, including but not limited to defendant Grace, and caused, allowed and permitted their staff and/or volunteers to create a culture of abuse, and to permit that culture of abuse to exist and persist for decades.

130.    Defendants were negligent, careless and reckless in the manner in which they supervised their staff and/or volunteers, including but not limited to defendant Grace, in that they failed to prevent them from sexually abusing as well as emotionally abusing those who had been entrusted to their care, custody, supervision and control including but not limited to Plaintiff M.R.

131.    Defendants were negligent, careless and reckless in their failure to properly supervise their agents, servants, employees, staff and/or volunteers so as to ensure that they were not sexually abusing as well as emotionally abusing, the children who were entrusted to their care, custody, supervision and control including but not limited to Plaintiff M.R.

132.    That as a result of this negligent hiring, retention and supervision by defendants, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the Plaintiff M.R. endured sexual abuse and molestation as well as emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

133.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an amount in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the Defendants herein.

## AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF M.R. BASED UPON A THEORY OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

134.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED AND THIRTH-THIRD" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

135.    Defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff, had the power, the ability and the authority, as well the duty, to stop the negligent, improper, unlawful and egregious conduct described hereinabove that resulted in plaintiff M.R. suffering severe emotional distress.

136.    Defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff, had the duty to intervene to stop, prevent and prohibit the negligent, improper, unlawful and egregious conduct described hereinabove that resulted in plaintiff M.R. suffering severe emotional distress.

137.    Defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff, knew or should have known that the failure to properly act would and in fact did cause plaintiff M.R. to suffer severe emotional distress.

138.    Defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff, negligently failed to act to stop, prevent and/or prohibit the negligent,

improper, unlawful and egregious conduct described hereinabove, thus resulting in plaintiff M.R.

suffering severe emotional distress.

139.    That as a result of the negligent infliction of emotional distress of defendants,

and/or each of them, and/or their agents, servants, employees, volunteers and/or staff as

aforesaid, the Plaintiff M.R. endured sexual abuse and molestation as well as emotional abuse,

and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and

significant conscious pain and suffering, including psychological suffering, emotional suffering

and emotional distress, mental anguish and loss of enjoyment of life, and has incurred medical

expenses and other economic damages and loss, and will continue to experience and incur these

damages and losses in the future.

140.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an

amount in excess of the jurisdictional limits of all lower Courts which would otherwise have

jurisdiction over the Defendants herein.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF M.R.
BASED UPON A THEORY OF INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS AGAINST ALL DEFENDANTS**

141.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation

contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED AND

FORTIETH" inclusive with the same force and effect as though said allegations were herein

fully set forth at length.

142.    Defendants and/or each of them, and/or their agents, servants, employees,

volunteers and/or staff, engaged in willful, contumacious, and outrageous conduct with respect to

M.R., with the intent to cause, and/or with reckless disregard of the probability of causing

plaintiff M.R. to suffer severe emotional distress.

143.    Defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff, engaged in willful, contumacious, and outrageous conduct with respect to M.R., with the intent to degrade and abuse M.R., and/or to satisfy and gratify their own sick sexual desires.

144.    Defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff committed these horrific acts with malicious, abusive and oppressive intent, and with the likelihood of causing plaintiff M.R. to suffer severe emotional distress.

145.    That as a result of the intentional infliction of emotional distress of defendants, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the Plaintiff M.R. endured sexual abuse and molestation as well as emotional abuse and emotional distress, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

146.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an amount in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the Defendants herein.

**AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF
PLAINTIFF M.R. BASED UPON A THEORY OF
BATTERY AGAINST ALL DEFENDANTS**

147.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED AND

Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 30 of 95

FORTY-SIXTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

148.    The horrific acts of the defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff amounted to harmful and offensive contacts to plaintiff M.R., all of which were done intentionally by the defendants and without plaintiff M.R.'s consent.

149.    Such acts were of a sexual and sexually abusive nature as well as an emotionally abusive nature, and were done without plaintiff's consent.

150.    Such acts were done for the purposes of degrading and abusing M.R., and/or to gratify the sick sexual desires of the defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff.

151.    As a direct and proximate result of the battery and/or sexual battery by the defendants, plaintiff M.R. was caused to suffer serious and severe personal injuries, emotional distress, conscious pain and suffering, psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

152.    That as a result of the battery and/or sexual battery of defendants, and/or each of them, and/or their agents, servants, employees, volunteers and/or staff as aforesaid, the Plaintiff M.R. was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

{00164060}

27

153.    That by reason of the foregoing, plaintiff M.R. is entitled to compensatory damages from the defendants, and is further entitled to punitive and exemplary damages.

154.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an amount in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the Defendants herein.

### AS AND FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF M.R. BASED UPON A THEORY OF ASSAULT AGAINST ALL DEFENDANTS

155.    That the Plaintiff M.R. repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED AND FIFTY-FOURTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

156.    The horrific acts of the defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff were intended to create and did in fact create a reasonable apprehension in plaintiff M.R. of immediate harmful and offensive contacts including but not limited to sexual contacts to M.R.'S person, all of which were done intentionally by the defendants and without plaintiff M.R.'S consent.

157.    Such acts were of a sexually abusive nature, and were done intentionally by the defendants without M.R.'S consent.

158.    Such acts were done for the purposes of degrading and abusing M.R., and/or to gratify the sick sexual desires of the defendants and/or each of them, and/or their agents, servants, employees, volunteers and/or staff.

159.    As a direct and proximate result of the assault and/or sexual assault by the defendants, plaintiff M.R. was caused to suffer serious and severe personal injuries, emotional

distress, conscious pain and suffering, psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

160.    That as a result of the assault and/or sexual assault of defendants, and/or each of them, and/or their agents, servants, employees, volunteers and/or staff as aforesaid, the Plaintiff M.R. was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

161.    That by reason of the foregoing, plaintiff M.R. is entitled to compensatory damages from the defendants, and is further entitled to punitive and exemplary damages.

162.    That by reason of the foregoing, the Plaintiff M.R. has been damaged in an amount in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the Defendants herein.

## STATEMENT REGARDING INTENT TO SEEK PUNITIVE DAMAGES

While not seeking punitive damages as a separate cause of action, Plaintiff puts Defendants on notice that Defendants' acts and omissions and statutory violations were wonton and reckless and evidence of disregard of the rights and safety of the general public and of Plaintiff. Punitive damages will be requested to punish Defendants and deter others from similar conduct.

*WHEREFORE*, M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the First Cause of Action.

*WHEREFORE*, M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the Second Cause of Action.

*WHEREFORE,* M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the Third Cause of Action.

*WHEREFORE,* M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the Fourth Cause of Action.

*WHEREFORE,* M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the Fifth Cause of Action.

*WHEREFORE,* M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the Sixth Cause of Action.

*WHEREFORE,* M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the Seventh Cause of Action.

*WHEREFORE,* M.R., demands a monetary judgment in the form of damages against the Defendants and/or each of them, on the Eighth Cause of Action, together with the costs and disbursements of this action.

## PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.

Dated: Brooklyn, New York
        October 21, 2019

"I have read the foregoing and I certify that, upon information and belief, the source of which is the review of a file maintained by my office, that the foregoing Summons and Verified Complaint is not frivolous as defined in Subsection (c) of Section 130-1.1 of the Rules of the

Chief Administrator."

Yours, etc.,

John Bonina, Esq.
Bonina & Bonina, P.C.
Attorneys for Plaintiff
16 Court Street – Suite 1800
Brooklyn, New York 11241
Phone No.: (718) 522-1786

STATE OF NEW YORK, COUNTY OF KINGS          ss:

I, the undersigned, am an attorney admitted to practice in the courts of New York, and

☐     certify that the annexed
        has been compared by me with the original and found to be a true and complete copy thereof.

**Attorney's
Certification**

☒     **John Bonina, Esq**. say that: I am the attorney of record, or of counsel with the attorney(s) of record, for the plaintiff(s).
        I have read the annexed **SUMMONS AND VERIFIED COMPLANT** know the contents thereof and the same are true to my
        knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them
        to be true.  My belief, as to those matters therein not stated upon knowledge, is based on the following.  By a review of a file maintained
        in my office.

**Attorney's
Verification By
Affirmation**

        The reason I make this affirmation instead of Plaintiff(s) is Plaintiff(s) reside(s) in a County other than the one in which I maintain my
        office.

I affirm that the foregoing statements are true under penalties of perjury.
**Dated: October 21, 2019**

------------------------------------------------------------
                                                    John Bonina, Esq.

STATE OF NEW YORK, COUNTY OF KINGS          ss:

☐     being sworn says: I am the plaintiff in the action herein; I have read the annexed know the contents thereof and the same are true to my
        knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them
        to be true.

**Individual
Verification**

☐     the                                        of
        a corporation, one of the parties to the action; I have read the annexed
        know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged
        on information and belief, and as to those matters I believe them to be true.

**Corporate
Verification**

My belief, as to those matters therein not stated upon knowledge, is based on the following:
Sworn to before me on
                                                    ------------------------------------------------------------

STATE OF NEW YORK, COUNTY OF KINGS          ss:

, being sworn says: I am not a party to the action, am over the age of 18 years of age and reside in
On, I served a true copy of the annexed in the following manner:

☐     by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S.
        Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

**Service By
Mail**

☐     by E-filing the same with the Supreme Court – New York County to the addressee(s) as indicated below:

**Service by
E-filing**

☐     by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation designated by
        the attorney for that purpose.  In doing so I received a signal from the equipment of the attorney indicating that the transmission
        was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon, in a post office or
        official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as I
        indicated below:

**Service By
Electronic
Means**

☐     by depositing the same with an overnight delivery service in a wrapper properly addressed.  Said delivery was made prior to the latest
        time designated by the overnight delivery service for overnight delivery.  The address and delivery service are indicated below:

**Service By
Overnight
Delivery**

Sworn to before me on
------------------------------------------------------------          ------------------------------------------------------------

{00163982}

**Index No.:** 522910/2019

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

M.R.,

Plaintiff,

-against-

BOY SCOUTS OF AMERICA; NATIONAL BOY SCOUTS OF AMERICA FOUNDATION; SCOUTS BSA; GREATER NEW YORK COUNCILS, BOY SCOUTS OF AMERICA; GREATER NEW YORK COUNCILS, QUEENS COUNCIL, BOY SCOUTS OF AMERICA; DIOCESE OF BROOKLYN; ST. BENEDICT JOSEPH LABRE CHURCH; ST. BENEDICT JOSEPH LABRE SCHOOL; CATHOLIC YOUTH ORGANIZATION - DIOCESE OF BROOKLYN; and JAMES T. GRACE JR.,

Defendants.

---

## SUMMONS AND VERIFIED COMPLAINT

---

**BONINA & BONINA, P.C.**

Attorneys for *Plaintiff(s)*

16 Court Street, Suite 1800

Brooklyn, New York 11241

Tele. No.: (718) 522-1786

Fax No.: (718) 243-0414

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.*

*Dated:* **October 21, 2019**

Signature: _____

Print Signer's Name: **John Bonina, Esq.**

---

*Service of a copy of the within*                                              *is hereby admitted.*
*Dated:*

_____

*Attorney(s) for*

---

**PLEASE TAKE NOTICE**

☐ *that the within is a (certified) true copy of a  entered in the office of the clerk of the within named Court on*

Notice of
Entry

☐ *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
*one of the judges of the within named Court,*

Notice of
Settlement

*at*                                    *on*                          *20     , at*                     *M.*

*Dated:*

**BONINA & BONINA, P.C.**
Attorneys for Plaintiff(s)
16 COURT STREET
BROOKLYN, N.Y. 11241

*To:*
*Attorney(s) for*

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-----------------------------------------------------------------X

N.P.,

                    Plaintiff,                          Index No.:

        v.                                         **SUMMONS**

LAWRENCE SVRCEK, ST. DEMETRIOS GREEK          **Venue is based on residence**
ORTHODOX CHURCH, GREEK ORTHODOX               **of one or more Defendant ST.**
ARCHDIOCESE OF AMERICA, THE BOY SCOUTS OF     **DEMETRIOS GREEK**
AMERICA, and THE BOY SCOUTS OF AMERICA        **ORTHODOX CHURCH,**
GREATER NEW YORK COUNCILS,                    **ST. DEMETRIOS GREEK**
                                              **ORTHODOX CHURCH**
                                              **8435 152nd St, Jamaica, NY**
                                              **11432.**

                    Defendants.

-----------------------------------------------------------------X


To the above-named Defendants:


    **YOU ARE HEREBY SUMMONED** to answer the attached Verified Complaint of

Plaintiff, N.P., dated October 11, 2019, a true and accurate copy of which is served upon you

herewith. You must serve your Verified Answer upon the undersigned attorneys either (1) within

twenty days after service of this Summons and the attached Verified Complaint, exclusive of the

day you received it. if you were served personally in the State of New York, or (2) within thirty

days after service, exclusive of the day you received it, if you were not served personally in New

York State.

    PLEASE TAKE NOTICE that should you fail to serve your Verified Answer within the

time prescribed under applicable law, Plaintiff, N.P., will take judgment against you by default

for the relief demanded in the Verified Complaint pursuant to Section 3215 of the New York

Civil Practice Law and Rules.

Dated:  New York, New York
        October 11, 2019

BELLUCK & FOX, LLP

Kristina Georgiou, Esq.
546 5th Avenue, 5th Floor
New York, New York 10036

To:

LAWRENCE SVRCEK
700 Latham Lane
Orient, NY 11957

ST. DEMETRIOS GREEK ORTHODOX CHURCH
8435 152nd St, Jamaica, NY 11432

GREEK ORTHODOX ARCHDIOCESE OF AMERICA
8 E 79th St, New York, NY 10075

THE BOY SCOUTS OF AMERICA
1325 W. Walnut Hill Lane # S406
Irving Texas 75038

THE BOY SCOUTS OF AMERICA
GREATER NEW YORK COUNCILS
475 Riverside Dr, New York, NY 10115

FILED: QUEENS COUNTY CLERK 10/11/2019 11:49 AM
Case 20-50527-LSS   Doc 112-1   Filed 11/05/20   Page 40 of 95
NYSCEF DOC. NO. 1

INDEX NO. 717381/2019
RECEIVED NYSCEF: 10/11/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
--------------------------------------------------------------------------X

N.P.,                                              Index No.:

                    Plaintiff,                     **COMPLAINT**

        v.                                         Jury Trial Demanded

LAWRENCE SVRCEK, ST. DEMETRIOS GREEK
ORTHODOX CHURCH, GREEK ORTHODOX
ARCHDIOCESE OF AMERICA, THE BOY SCOUTS OF
AMERICA, and THE BOY SCOUTS OF AMERICA
GREATER NEW YORK COUNCILS

--------------------------------------------------------------------------X

N.P., by his undersigned attorneys, for his Complaint, alleges on personal knowledge as to himself and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This action is timely commenced pursuant to the New York State Child Victims Act, dated February 14, 2019 (22 NYCRR 202.72). and CPLR §214-g.

2.      The Child Victims Act allows individuals whom a sexual offense(s) was committed against as a child, recourse against those who both committed the sexual offense(s) and/or those who permitted the sexual offense(s) and failed to address it.

3.      This is an action to recover damages arising from LAWRENCE SVRCEK sexual molestation of Plaintiff N.P. during the years of 1977-1982, when N.P. was approximately 11 years old.

4.      LAWRENCE SVRCEK was N.P.' was a gym and science teacher at St. Demetrios, N.Y. Day School, which was the parochial school of ST. DEMETRIOS GREEK

ORTHODOX CHURCH, which was under the direction and control of the GREEK ORTHODOX ARCHDIOCESE OF AMERICA.

5.      During the summer of 1977 LAWRENCE SVRCEK was in charge of the summer school at St. Demetrios, N.Y. Day School at which N.P. was a student.

6.      During the periods of abuse, LAWRENCE SVRCEK maintained an office at St. Demetrios, N.Y. Day School, wherein he would engage in sexually explicit behavior and lewd and lascivious conduct with N.P..

7.       LAWRENCE SVRCEK was also N.P.' Boy Scout Scoutmaster, Troop number 346, which was a part of THE BOY SCOUTS OF AMERICA, and THE BOY SCOUTS OF AMERICA GREATER NEW YORK COUNCILS.

8.      LAWRENCE SVRCEK engaged in sexually explicit behavior and lewd and lascivious conduct with N.P. on multiple occasions between 1977 and 1982, in Queens County, at  St. Demetrios, N.Y. Day School and at various campsites  including but not limited to,  10 Mile River and  Apline Scout Camp during Boy Scout trips,

9.      During the period of molestation N.P. brought his concerns to the church board of ST. DEMETRIOS GREEK ORTHODOX CHURCH. LAWRENCE SVRCEK was removed as N.P.' Scoutmaster but remained as a teacher at St. Demetrios, N.Y. Day School.

10.      LAWRENCE SVRCEK, ST. DEMETRIOS GREEK ORTHODOX CHURCH, GREEK ORTHODOX ARCHDIOCESE OF AMERICA, THE BOY SCOUTS OF AMERICA, and THE BOY SCOUTS OF AMERICA GREATER NEW YORK COUNCILS will be referred to collectively as the "Defendants."

11.      ST. DEMETRIOS GREEK ORTHODOX CHURCH, GREEK ORTHODOX ARCHDIOCESE OF AMERICA, THE BOY SCOUTS OF AMERICA, and THE BOY

SCOUTS OF AMERICA GREATER NEW YORK COUNCILS will be referred to collectively as the "Supervisory Defendants."

12.     The Supervisory Defendants, who employed, supervised, and/ or directed LAWRENCE SVRCEK, failed to take steps to prevent LAWRENCE SVRCEK a from molesting the children in his care. Instead, the Defendants left a sexual predator in charge of school-age children and took no steps to protect the young victims on whom LAWRENCE SVRCEK preyed.

## THE PARTIES

13.     Plaintiff N.P. resided in New York County, New York. At the time of the events complained of, he was a minor residing in Queens County. New York.

14.     LAWRENCE SVRCEK is a resident of Suffolk County New York.

15.     LAWRENCE SVRCEK was a teacher at St. Demetrios, N.Y. Day School, and a scoutmaster for THE BOY SCOUTS OF AMERICA during the periods of the molestations and abuse.

16.     ST. DEMETRIOS GREEK ORTHODOX CHURCH is a New York not-for-profit corporation located in Queens County.

17.     At all times herein mentioned is, ST. DEMETRIOS GREEK ORTHODOX CHURCH, is a Greek Orthodox Parish within and under the authority of the GREEK ORTHODOX ARCHDIOCESE OF AMERICA.

18.     At all times herein mentioned is, ST. DEMETRIOS GREEK ORTHODOX CHURCH, created, oversaw, supervised, managed, controlled, directed and operated St. Demetrios, N.Y. Day School.

19.     At all times herein mentioned is, ST. DEMETRIOS GREEK ORTHODOX
CHURCH, oversaw, supervised, managed, controlled, directed LAWRENCE SVRCEK.

20.     The GREEK ORTHODOX ARCHDIOCESE OF AMERICA is the governing
and controlling body of the Greek Orthodox Church in the United States. It controls and operates
over 500 parishes within eight "metropolises" and the Archdiocesan District.

21.     Upon information and belief, the GREEK ORTHODOX ARCHDIOCESE OF
AMERICA controls, owns, operates, and governs ST. DEMETRIOS GREEK ORTHODOX
CHURCH in accordance with its own Parish Guidelines. The GREEK ORTHODOX
ARCHDIOCESE OF AMERICA is headquartered in New York, New York.

22.     At all times herein mentioned is, the GREEK ORTHODOX ARCHDIOCESE OF
AMERICA, created, oversaw, supervised, managed, controlled, directed and operated, ST.
DEMETRIOS GREEK ORTHODOX CHURCH.

23.     At all times herein mentioned is, the GREEK ORTHODOX ARCHDIOCESE OF
AMERICA, created, oversaw, supervised, managed, controlled, directed and operated St.
Demetrios, N.Y. Day School.

24.     At all times herein mentioned is the GREEK ORTHODOX ARCHDIOCESE OF
AMERICA, oversaw, supervised, managed, controlled, directed LAWRENCE SVRCEK.

25.     THE BOY SCOUTS OF AMERICA was and is a corporation with a principle
place of business in Irving, Texas.

26.     THE BOY SCOUTS OF AMERICA is authorized to do business and does
business in the State of New York, in Queens county, and various other counties in the state
through various local and regional Boy Scout organizations such as THE BOY SCOUTS OF
AMERICA GREATER NEW YORK COUNCILS.

27.     THE BOY SCOUTS OF AMERICA GREATER NEW YORK COUNCILS is located in New York County, New York.

## **FACTUAL BACKGROUND**

28.     ST. DEMETRIOS GREEK ORTHODOX CHURCH and the GREEK ORTHODOX ARCHDIOCESE OF AMERICA operated St. Demetrios, N.Y. Day School during 1972-1982.

29.     LAWRENCE SVRCEK duties and responsibilities as a teacher and scoutmaster included supervising, interacting with, mentoring, and counseling minor boys.

30.     LAWRENCE SVRCEK developed an inappropriate relationship with  Plaintiff N.P. inducing Plaintiff as a very young child, to look up to him and to place absolute trust and confidence in him. LAWRENCE SVRCEK then abused that trust and confidence by sexually molesting N.P..

31.     From 1978-1982, LAWRENCE SVRCEK engaged in this explicit sexual behavior and lewd and lascivious conduct with N.P. when N.P. was a minor child.

32.     LAWRENCE SVRCEK was acting within the scope of his employment as a teacher and scoutmaster, soliciting N.P. trust and meeting with him outside the supervision of other adults. LAWRENCE SVRCEK abused N.P.'s trust and used such meetings as opportunities to rape and otherwise molest N.P..

33.     LAWRENCE SVRCEK molested N.P. at the premises of St. Demetrios, N.Y. Day School and ST. DEMETRIOS GREEK ORTHODOX CHURCH.

34.     LAWRENCE SVRCEK molested N.P. while at Boy scout outings and trips.

Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 45 of 95

35.     LAWRENCE SVRCEK encouraged underage drinking and supplied N.P. with alcohol while on Boy Scout camping trips.

36.     LAWRENCE SVRECK, recommended Brian Hughes aka Gerald Esposito, to be a teacher at St. Demetrios, N.Y. Day School and be Boy Scout leader during the above-mentioned time period, and Brian Hughes subsequently was hired as a teacher and Boy Scout leader

37.     Brian Hughes also engaged in sexually explicit behavior and lewd and lascivious conduct minor boys, including N.P..

38.     Brian Hughes left his employ at St. Demetrios, N.Y. Day School suddenly and without warning during the above-mentioned time period. Several weeks later Brian Hughes was arrested for child molestation in New Jersey. Brian Hughes was a known child molester to the BOY SCOUTS OF AMERICA.

39.     The Supervisory Defendants failed to direct and/or supervise Brian Hughes in a manner to prevent, or detect, Brian Hughes' sexual abuse of minor boys, including N.P..

40.     THE BOY SCOUTS OF AMERICA is one of the largest youth organizations in the United States, with more than 2.4 million youth participants and nearly one million adult volunteers. THE BOY SCOUTS OF AMERICA was founded in 1910, and since then, more than 110 million Americans have been participants in THE BOY SCOUTS OF AMERICA programs at some time.

41.     Throughout its history, THE BOY SCOUTS OF AMERICA has held itself out to the public as "moral and safe" environment for boys to participate in healthy outdoor activities and to be given proper guidance and instruction.

42.     Despite carrying itself out as a "moral and safe environment", since the 1940s, THE BOY SCOUTS OF AMERICA has been surreptitiously removing Scoutmasters for child sexual abuse at a terrifying and shocking rate. THE BOY SCOUTS OF AMERICA records demonstrate that it has long known that scouting attracts pedophiles in large numbers and that scouts are at the heightened risk of sexual abuse by child molesters.

43.     Notwithstanding this knowledge and relationship of trust owed to the children Boy Scouts and the parents who enrolled their children in the Boy Scouts, THE BOY SCOUTS OF AMERICA negligently, recklessly, and willfully failed to protect plaintiff from LAWRENCE SVRCEK 's sexual abuse, permitted the abuse to occur, neglected to adequately supervise LAWRENCE SVRCEK, failed to timely investigate LAWRENCE SVRCEK 's misconduct, acted to protect their own self-interest to the detriment of innocent children, and are otherwise responsible for LAWRENCE SVRCEK's sexual assault of Plaintiff and his consequential injuries and damage.

44.     The Supervisory Defendants hired and/or appointed LAWRENCE SVRCEK as a teacher, coach, mentor, and counselor for minor boys. By so hiring or appointing him, the Supervisory Defendants made certain representations about LAWRENCE SVRCEK 's character, specifically that LAWRENCE SVRCEK was a role model for minor boys and an individual to whom minor boys could be safely entrusted. At the time the Supervisory Defendants hired and/ or appointed LAWRENCE SVRCEK and made these representations about his character, the Supervisory Defendants knew, or should have known, of LAWRENCE SVRCEK 's propensity to molest boys and should not have put him in a position of trust and confidence with, and authority over, young boys.

45.     Rather than taking steps to prevent LAWRENCE SVRCEK from sexually assaulting children, including removing him from a position of trust and confidence with, authority over, young boys, the Supervisory Defendants instead turned a blind eye while LAWRENCE SVRCEK repeatedly molested N.P. over a five period.

46.     The Supervisory Defendants failed to direct and/or supervise LAWRENCE SVRCEK in a manner to prevent, or detect, LAWRENCE SVRCEK's sexual abuse of minor boys, including N.P..

47.     As a result of LAWRENCE SVRCEK sexual abuse, N.P. suffered physical, psychological, and emotional injury. N.P. experienced feelings of guilt, loss of self-respect, shame, embarrassment, sadness, anger, depression, anxiety, and confusion resulting from LAWRENCE SVRCEK sexual abuse. N.P. developed life-long problems with authority, with sex, and with being touched as a result of LAWRENCE SVRCEK sexual abuse. He suffered from nightmares, panic attacks, and flashbacks.

48.     N.P. only as an adult came to understand that he had been harmed and that the harm was caused by the explicit sexual behavior and lewd and lascivious acts of. LAWRENCE SVRCEK.

49.     LAWRENCE SVRCEK "stole his life" from him, by molesting him when he was a child and leaving him with lifelong, deep-seated problems whose origins he did not until later on in his life suspect or understand.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION:

## ASSAULT AND BATTERY, SEXUAL MOLESTATION ABUSE OD A MINOR, SEXUAL BATTERY

50.     That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "49" herein , as though more fully set forth herein at length.

51.     On numerous occasions from 1977 to 1982, Defendant LAWRENCE SVRCEK intentionally touched N.P. 's body when he engaged in sexual behavior and the lewd and lascivious conduct described above. Such bodily contact was offensive and was without consent, because N.P., as a minor, was incapable of consenting to these acts.

52.     The seduction, sexual touching, and molestations were committed against N.P. without his consent as N.P. did not comprehend or understand what LAWRENCE SVRCEK was doing or the harm it would cause him.

53.     By reason of the age of the plaintiff at the time of the molestation and sexual abuse, the plaintiff was unable to perceive the harm posed to him by LAWRENCE SVRCEK and or his conduct/omissions and could not consent to the sexual and physical conduct by LAWRENCE SVRECK and did not consent.

54.     At all times herein relevant LAWRENCE SVRCEK was acting within the course and scope of his employment, appointment and/or agency with ST. DEMETRIOS GREEK ORTHODOX CHURCH, and the GREEK ORTHODOX ARCHDIOCESE OF AMERICA.

55.     At all times herein relevant LAWRENCE SVRCEK was acting within the course and scope of his employment, appointment and/or agency with THE BOY SCOUTS OF AMERICA, and THE BOY SCOUTS OF AMERICA GREATER NEW YORK COUNCILS.

56.     At all times herein relevant, LAWRENCE SVRCEK offensively touched N.P. 's body, LAWRENCE SVRCEK while employed and/or appointed by some or all of the Supervisory Defendants as N.P. 's teacher, Scoutmaster, coach, mentor, and counselor. It was part of LAWRENCE SVRCEK job as role model, teacher, Scoutmaster, and coach, to gain N.P. 's trust.

57.     LAWRENCE SVRCEK used his position, and the representations made by the Supervisory Defendants about his character that accompanied that position, to gain N.P. 's trust and confidence and to create opportunities to be alone with, and touch, N.P..

58.     N.P. suffered injury as a result of LAWRENCE SVRCEK offensive bodily contact, including psychological and emotional injury as described above.

59.     By the reason of the foregoing, LAWRENCE SVRCEK is liable to N.P. for battery in a sum exceeding the jurisdictional limits of all lower courts.

## SECOND CAUSE OF ACTION:
## NEGLIGENT HIRING
## AGAINST ALL SUPERVISORY DEFENDANTS

60.     That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "59" herein , as though more fully set forth herein at length.

61.     The Supervisory Defendants hired and/or appointed LAWRENCE SVRCEK as a teacher, Scoutmaster, coach, mentor, and/ or counselor for minor boys.

62.     The Supervisory Defendants were negligent in hiring LAWRENCE SVRCEK because they knew, or if they did not know, they should have known, of his propensity to

develop inappropriate relationships with boys in his charge and to engage in sexual behavior and lewd and lascivious conduct with such boys.

63.     LAWRENCE SVRCEK would not and could not have been in a position to sexually abuse N.P. had he not been hired by the Supervisory Defendants to be a teacher, Scoutmaster, coach, mentor, and/ or counselor for minors.

64.     N.P. suffered injury as a result of LAWRENCE SVRCEK inappropriate sexual behavior and lewd and lascivious conduct, including psychological and emotional injury as described above.

65.     As the result of said negligence, the plaintiff was caused to suffer severe physical and emotional injuries and pain and suffering; emotional and psychological distress and horror.

66.     By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.

## THIRD CAUSE OF ACTION:
## NEGLIGENT RETENTION, SUPERVISION AND/OR DIRECTION
## AGAINST ALL SUPERVISORY DEFENDANTS

67.     That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "66" herein , as though more fully set forth herein at length.

68.     At all times while LAWRENCE SVRCEK was employed or appointed by the various Supervisory Defendants, he was supervised by, under the direction of, and/or answerable to, the various Supervisory Defendants and/or their agents and employees.

69.     At all times while LAWRENCE SVRCEK was employed or appointed by the various Supervisory Defendants, he was supervised by, under the direction of, and/or answerable to, the various Supervisory Defendants and/or their agents and employees.

70.     The Supervisory Defendants were negligent in their direction and/ or supervision of LAWRENCE SVRCEK  in that they knew, or if they did not know, they should have known, of his propensity to develop inappropriate relationships with boys under his charge and to engage in sexual behavior and lewd and lascivious conduct with such boys, yet they failed to take steps to prevent such conduct from occurring.

71.     The Supervisory Defendants were negligent in their retention of LAWRENCE SVRCEK  in that that they knew, or if they did not know, they should have known, of his propensity to develop inappropriate relationships with boys under his charge and to engage in sexual behavior and lewd and lascivious conduct with such boys, yet they retained him in his position as teacher, coach,  and counselor to such boys and thus left him in a position to continue such behavior.

72.     The Supervisory Defendants were further negligent in their retention, supervision, and/or direction of LAWRENCE SVRCEK in that LAWRENCE SVRCEK sexually molested N.P. on the premises of one or more Supervisory Defendants. The Supervisory Defendants failed to take reasonable steps to prevent such events from occurring on their premises.

73.     That the Supervisory defendants, has as a matter of policy and practice and with deliberate indifference failed to adequately train, supervise, discipline, sanction or otherwise direct it's Scoutmasters, including, but not limited to LAWRENCE SVRCEK.

74.     The defendants, knew or should have known  that  their failure to adequately address these issues within the school, dioceses , and the Boy Scouts had caused problems  in the

past, and would continue to cause problems in the future, including allowing pedophiles near minors because of the failure to adopt and implement adequate policies, procedures and practices and to adequately screen, train, supervise and/or disciple Scoutmasters engaging in, or likely engage in such behavior.

75. The Supervisory defendants negligently failed to hire, retain, supervise, individuals who could safely act as teachers and/ or Scoutmasters for minors, by failing to conduct proper background checks on LAWRENCE SVRCEK , by failing to train local members in proper testing screening, and selection of LAWRENCE SVRCEK , as a Scoutmaster, by failing to monitor and supervise LAWRENCE SVRCEK 's training and activities as Scoutmaster. Defendants negligently managed, controlled, supervised, taught, educated, oversaw Boy Scouts over the years, including the Plaintiff.

76. The Supervisory Defendants were negligent careless in they knew or should have known that LAWRENCE SVRCEK was a pedophile and should have carefully supervised him and limited or prohibited his activities with all minors including N.P..

77. LAWRENCE SVRCEK would not and could not have been in a position to sexually abuse N.P. had he not been negligently retained, supervised, and/or directed by the Supervisory Defendants as a teacher, coach, mentor, and counselor to at the St. Demetrios, N.Y. Day School and by Plaintiff's local Boy Scout Troop.

78. But for the Supervisory Defendants' inaction in hiring, retaining, and failure to supervise LAWRENCE SVRCEK and in failing to use reasonable care to correct and remove LAWRENCE SVRCEK from his duties, he would not have been in the position to sexually abuse N.P..

79.    N.P. suffered injury as a result of LAWRENCE SVRCEK inappropriate sexual behavior and lewd and lascivious conduct, including psychological and emotional injury as described above.

80.    As the result of said negligence, the plaintiff was caused to suffer severe physical injuries and pain and suffering; emotional and psychological distress and horror.

81.    By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.

## FOURTH CAUSE OF ACTION:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82.    That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "81" herein, as though more fully set forth herein at length.

83.    The sexual abuse of N.P. when he was a minor was extreme and outrageous, beyond all possible bounds of decency.

84.    LAWRENCE SVRCEK acted intentionally, maliciously, and recklessly, for the purpose of causing severe emotional and physical distress to N.P..

85.    The Supervisory Defendants knew or disregarded the substantial probability that LAWRENCE SVRCEK's conduct would cause severe physical, psychological, and emotional distress to N.P..

86.    In performing these wrongful acts, LAWRENCE SVRCEK' abused his position as teacher and Scoutmaster and acted wantonly and reckless with complete disregard for the consequences to N.P. and others.

87.    Because of N.P.'s sexual abuse, he suffered severe. Physical, psychological, and emotional injury.

88.    At the time of LAWRENCE SVRCEK's misconduct and sexual abuse, he was acting at the direction of and with the authority invested in him, in a position of power, by the Supervisory Defendants, and was otherwise acting in the course and scope of his employment by the Supervisory Defendants.

89.    By reason of the forgoing, all the Supervisory Defendants are liable for LAWRENCE SVRCEK's conduct under the doctrine of respondeat superior.

90.    N.P. suffered injury as a result of LAWRENCE SVRCEK inappropriate sexual behavior and lewd and lascivious conduct, including psychological and emotional injury as described above.

91.    As the result of said negligence, the plaintiff was caused to suffer severe physical injuries and pain and suffering; emotional and psychological distress and horror.

92.    By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.

## FIFTH CAUSE OF ACTION:
## NEGLIGENCE/ GROSS NEGLIGENCE

93.    That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "93" herein, as though more fully set forth herein at length.

94.     That at all times herein relevant LAWRENCE SVRCEK engaged in activities of a harmful nature and abused his position of trust and authority.

95.     LAWRENCE SVRCEK utilized his role as a teacher and Scoutmaster by violating his duty of care, trust, loyalty toward plaintiff.

96.     The wrongful acts and the injuries resulting therefrom were caused by the negligence, carelessness, and recklessness of LAWRENCE SVRCEK as a teacher for ST. DEMETRIOS GREEK ORTHODOX CHURCH and the GREEK ORTHODOX ARCHDIOCESE OF AMERICA.

97.     The wrongful acts and the injuries resulting therefrom were caused by the negligence, carelessness, and recklessness of LAWRENCE SVRCEK as a Scoutmaster for THE BOY SCOUTS OF AMERICA, and THE BOY SCOUTS OF AMERICA GREATER NEW YORK COUNCILS.

98.     The wrongful acts and the injuries resulting therefrom were caused by the negligence, careless, and recklessness of the Supervisory Defendants.

99.     Such negligence consisted of negligence in failing exercise ordinary care, in causing physical, emotional and psychological harm and distress to the plaintiff; in humiliating the plaintiff; in inappropriately touching the plaintiff, in sexually abusing the plaintiff; in abusing his position of authority; in luring children; in attempting other various devious sexual acts; in breaching the fiduciary duty; in acting from a position of power and control over the minor plaintiff; in breaching the trust and loyalty to the plaintiff; in cover-up LAWRENCE SVRCEK 's wrongful acts; in failing to properly screen LAWRENCE SVRCEK; in allowing pedophiles to be around young children including the Plaintiff; in failing to investigate the previous activities of LAWRENCE SVRCEK ; in failing to investigate

the background, character and fitness of LAWRENCE SVRCEK to serve as a scoutmaster and teacher; in failing to adequately investigate and/or inquire into LAWRENCE SVRCEK 's background or history; in failing to adequately investigate LAWRENCE SVRCEK 's prior relationships with minor children; in failing to subject LAWRENCE SVRCEK to appropriate testing to uncover his pedophilic proclivities; in failing to have in systems or policies in place and a procedure to monitor, and supervise Scoutmasters and/or teachers who work closely with or come into contact with children; in allowing LAWRENCE SVRCEK to have children meet him with no other adults present; in allowing LAWRENCE SVRCEK to travel with children with no other adults present; in failing to take prompt action to remove LAWRENCE SVRCEK; in failing to take prompt action regarding complaints and suspicions of sexual molestation; in failing to adopt or enforce a two-adult rule; in failing to adopt policies and procedures to protect children; in failing to advise parents of information in the ineligible volunteers files; in failing to adequately maintain, review, and update the ineligible volunteer files; in failing to warn parents of information regarding scoutmaster and their propensity to engage in inappropriate behavior.

100. That the Supervisory Defendants were negligent by failing to supervise the conduct and activities of LAWRENCE SVRCEK.

101. That LAWRENCE SVRCEK was negligent, reckless and careless in sexually abusing the plaintiff and the Supervisory Defendants are liable for LAWRENCE SVRCEK ' s negligence under the doctrine of respondeat superior.

102. Upon information and belief, the Supervisory Defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by teaches and or Scoutmasters and prevent disclosure , prosecution, and civil litigation including but not limited to: failing to report

incidents of abuse to law enforcement or child protection agencies; concealing abuse they had substantiated and failing to seek out and redress the injuries its teachers and/or Scoutmasters and leaders had caused; and failing to advise local scouting agencies of the rampant problem of sexual abuse of scouts by Scoutmasters and leaders and that THE BOY SCOUTS OF AMERICA's system of "Ineligible volunteer Files" was ineffective at curbing the problem.

103. Based on these actions the Supervisory Defendants engaged m fraudulent concealment.

104. The Supervisory Defendants, by and through their agents representatives, conspired to cover up incidents of sexual abuse of minors by teachers and or Scoutmasters, including LAWRENCE SVRCEK , and to prevent disclosure, prosecution and civil litigation including but not limited to: failing to report incidents of childhood sexual abuse to law enforcement or child protection; aiding criminal child molesters in evading detection, arrest and prosecution; failing to warn; and failing to seek out and redress the injuries its adult teacher and or Scoutmaster had caused.

105. Based on these actions; the Supervisory Defendants, by and through their agents and representatives, conspired for the unlawful purposed of concealing and suppressing information on the danger and treat that LAWRENCE SVRCEK posed to unsuspecting children including the Plaintiff.

106. As the result of said negligence, the plaintiff was caused to suffer severe physical injuries and pain and suffering; emotional and psychological distress and horror.

107. By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.

## SIXTH CAUSE OF ACTION:
## BREACH OF FIDUCIARY DUTY

108.  That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "107" herein, as though more fully set forth herein at length.

109.  There exists a fiduciary relationship of trust, confidence, and reliance between Plaintiff and Defendants. This relationship is based on the entrustment of the Plaintiff while he was a minor child to the care and supervision of the agent or servant of the Defendants. This entrustment of the Plaintiff to the care and supervision of the Defendants, while the Plaintiff was a minor child, required the Defendants to assume a fiduciary relationship and to act in the best interests of the Plaintiff, as well as to protect him while he was a minor and vulnerable child

110.  Pursuant to their fiduciary relationship, the Defendants were entrusted with the well-being, care, and safety of Plaintiff.

111.  Pursuant to their fiduciary relationship, Defendants assumed a duty to act in the best interests of the Plaintiff.

112.  The defendants breached that duty to the Plaintiff.

113.  At all times material hereto, the Defendants actions and/or inactions were willful, wanton, malicious, reckless, and outrageous in their disregard for the rights and safety of Plaintiff.

114.  As a result of said conduct plaintiff as suffered the injuries and damages described herein.

115.  By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.

### SEVENTH CAUSE OF ACTION:
### Breach of Duty *in Loco Parentis*

116.    That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "115" herein , as though more fully set forth herein at length.

117.    While he was a minor, Plaintiff was entrusted by his parents to the control of the LAWRENCE SVRCEK, an agent or servant of the Supervisory Defendants, for the purposes of inter alia, providing Plaintiff with appropriate guidance and an opportunity to enjoy educational and youth activities under responsible adult supervision. These Defendants owe – and owed - a duty to children entrusted to them to act in loco parentis and to prevent foreseeable injuries.

118.    Defendants breached their duty to act *in loco parentis*.

119.    At all times material hereto, the Defendants actions and/or inactions were willful, wanton, malicious, reckless, and outrageous in their disregard for the rights and safety of Plaintiff.

120.    As a result of said conduct Plaintiff as suffered the injuries and damages described herein.

121.    By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.

### EIGHTH CAUSE OF ACTION:
### BREACH OF STATUTORY DUTY TO REPORT ABUSE UNDER SOC.
### SERV. LAW §§ 413, 420

122.     That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "121" herein  , as though more fully set forth herein at length.

123.     Pursuant to N.Y. Soc. Serv. Law §§ 413 and 420, the Supervisory Defendants had a statutorily imposed duty to report reasonable suspicion of abuse of children in their care.

124.     The Supervisory Defendants breached that duty by knowingly and willfully failing to report reasonable suspicion of abuse by LAWRENCE SVRCEK.

125.     As a result of said conduct plaintiff as suffered the injuries and damages described herein.

126.     By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.


## NINTH CAUSE OF ACTION:
## PREMISE LIABILITY

127.     That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "126" herein  , as though more fully set forth herein at length.

128.     At all times herein relevant the Defendants ST. DEMETRIOS GREEK ORTHODOX CHURCH and the GREEK ORTHODOX ARCHDIOCESE OF AMERICA owned operated, and /or controlled the premises of Defendant ST. DEMETRIOS GREEK ORTHODOX CHURCH and at St. Demetrios, N.Y. Day School including the areas where the sexual abuse of Plaintiff occurred.

129.    At all times herein relevant the Defendants THE BOY SCOUTS OF AMERICA, and THE BOY SCOUTS OF AMERICA GREATER NEW YORK COUNCILS operated, and /or controlled the premises of Defendant ST. DEMETRIOS GREEK ORTHODOX CHURCH and at St. Demetrios, N.Y. Day School including the areas where the sexual abuse of Plaintiff occurred.

130.    Defendants ST. DEMETRIOS GREEK ORTHODOX CHURCH and the GREEK ORTHODOX ARCHDIOCESE OF AMERICA had a duty to see that the premises at which Plaintiff was rightfully present were in a reasonably safe condition for the intended use by students, like Plaintiff, whose presence was reasonably anticipated.

131.    Defendants THE BOY SCOUTS OF AMERICA, and THE BOY SCOUTS OF AMERICA GREATER NEW YORK COUNCILS had a duty to see that the premises at which Plaintiff was rightfully present were in a reasonably safe condition for the intended use by Boy Scouts, like Plaintiff, whose presence was reasonably anticipated.

132.    The Supervisory Defendants willfully, recklessly, and negligently failed to provide a reasonably safe premise that was free from the presence of sexual predators and/or the assault by the occupants of the premises, including LAWRENCE SVRECK thereby breaching their duty of care to the plaintiff.

133.    As a result of said conduct plaintiff suffered the injuries and damages described herein.

134.    By the reason of the foregoing, the Defendants are liable to N.P. in a sum exceeding the jurisdictional limits of all lower courts.

## TENTH CAUSE OF ACTION:
## PUNITIVE DAMAGES

135. That at all times hereinafter mentioned, the plaintiff repeat, reiterate, and reallege each and every allegation contained in the paragraphs of this Complaint designated as "1" through "134" herein , as though more fully set forth herein at length.

136. The actions of the Defendants herein-above alleged, were malicious, willful and grossly negligent.

137. The conduct of the Defendants was done with the utter disregard as to the injuries that would ensue and with depraved indifference to the health and well-being of children, and to the fact that defendants knowingly subjected children, including the plaintiff, to sexual predators.

138. The Supervisory Defendants, by and through their agents representatives, conspired to cover up incidents of sexual abuse of minors by teachers and/or Scoutmasters, including LAWRENCE SVRCEK , and to prevent disclosure, prosecution and civil litigation including but riot limited to: failing to report incidents of childhood sexual abuse to law enforcement or child protection agencies; aiding criminal child molesters in evading detection, arrest and prosecution; failing to seek out and redress the injuries its adult teacher and scoutmaster had caused.

139. Based on these actions, the Supervisory Defendants, by and through their agents and representatives, conspired for the unlawful purposed of concealing and suppressing information on the danger and treat that LAWRENCE SVRCEK posed to unsuspecting children including N.P..

140. Upon Information and belief, the Supervisory Defendants were engaged in a plan of action to cover up incidents of the sexual abuse of minors.

141.    Based on these actions the Supervisory defendants engaged in fraudulent concealment.

142.    As a result of the Defendants conduct that was wanton, reckless, malicious, and a conscious indifference and utter disregard of its effect on the health, safety and right of other including plaintiff, plaintiff is entitled to recover punitive damages in the amount to be determined by the finder of fact.

143.    By reason of the foregoing, the plaintiff, demands judgment for punitive damages against all the defendants, in a sum exceeding the jurisdictional limits of all the lower courts.

## JURY DEMAND

144.    Plaintiff demands a trial by jury of all issues triable by jury in this action.

WHEREFORE Plaintiff demands judgment against the Defendants on each cause of action as follows:

A. Awarding compensatory damages in an amount to be proved at trial, but in any event in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction;

B. Awarding punitive damages to the extent permitted by law;

C. Awarding prejudgment interest to the extent permitted by law;

D. Awarding costs and fees of this action, including attorneys' fees, to the extent permitted by law;

E. Awarding such other and further relief as to this Court may seem just and proper.

BELLUCK & FOX, LLP

Kristina Georgiou, Esq.
546 5th Avenue, 5th Floor
New York, New York 10036

## ATTORNEY VERIFICATION

STATE OF NEW YORK          )

                           )

COUNTY OF NEW YORK    )


**Kristina M. Georgiou.**, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am an associate of BELLUCK & FOX, LLP, attorneys of record for Plaintiff.

I have read the annexed COMPLAINT and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

The reason this verification is made by me and not by plaintiff is that Plaintiff is not presently in the county wherein I maintain my offices.


Dated: New York, New York

        October 11, 2019



                        BELLUCK & FOX, LLP

                        Kristina M. Georgiou, Esq.

EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

MICHAEL O'MALLEY,

<em>Plaintiff,</em>

**Index No.: 518178/2019**

-against-

THE ROMAN CATHOLIC DIOCESE OF
BROOKLYN, NEW YORK, CHURCH OF THE HOLY
INNOCENTS, BOY SCOUTS OF AMERICA,
GREATER NEW YORK COUNCIL OF THE BOY
SCOUTS OF AMERICA, ALPINE SCOUT CAMP and
FRANK PEDONE,

<u>**AMENDED**</u><br><u>**VERIFIED COMPLAINT**</u>

<em>Defendants.</em>

-------------------------------------------------------------------X

Plaintiff, above-named, complaining of the Defendants, by **MERSON LAW**, **PLLC**,

respectfully alleges:

<u>**NATURE OF THE CLAIM**</u>

1.  This is a case of plaintiff Michael O'Malley who was sexually abused as a child by Frank

    Pedone ("Pedone") at and of Alpine Scout Camp ("Alpine") and The Roman Catholic

    Diocese of Brooklyn, New York ("Diocese").

2.  At all times herein mentioned, Pedone was a scout master for the Boy Scouts of America

    ("BSA") and Greater New York Council of the Boy Scouts ("Boy Scouts").

3.  At all times herein mentioned, Father Joseph Foley was aware of the sexual abuse

    endured by Mr. O'Malley and failed to report it.

4.  At all times herein mentioned, the Church of the Holy Innocents ("Holy Innocents") was

    a part of the Diocese.

5.  At all times herein mentioned, Mr. O'Malley's troop in which Pedone was scout master

    was associated with the Holy Innocents.

6.    Mr. O'Malley informed Father Joseph Foley of the sexual abuse he suffered at the hands of Pedone and Father Foley failed to report the abuse or take any action to prevent Pedone from having access to Mr. O'Malley or other young boys affiliated with the BSA, the Boy Scouts and/or the Diocese.

7.    Pedone was an agent, servant and/or employee of the BSA, the Boy Scouts and/or the Diocese and utilized his position of authority with the BSA, the Boy Scouts and/or the Diocese to sexually abuse Mr. O'Malley. Pedone was known among the community and the children of the Boy Scout troop as a sexual predator.

8.    Despite Pedone's reputation as a sexual predator, he continued to be employed as a scout master under the supervision and control of the BSA and the Boy Scouts.

9.    The Diocese, the BSA and the Boy Scouts knew or should have known that Pedone sexually abused boys enrolled in the BSA and/or Boy Scouts program and/or that he had a propensity to sexually abuse the young children of the troop.

10.    Beginning in or about 1968 and continuing until approximately 1970, Pedone forcefully performed oral sex on Mr. O'Malley and attempted to kiss Mr. O'Malley after boy scout meetings, on camping trips, at school, on hikes, in Mr. O'Malley's home, and other locations. Mr. O'Malley was approximately eleven years old when the sexual abuse by Pedone began.

11.    Mr. O'Malley brings this lawsuit to recover for the emotional and physical suffering he incurred because of the negligence of the Diocese, the Holy Innocents, the BSA, the Boy Scouts and Alpine and to make sure no other child is forced to suffer the abuse and physical and mental trauma he felt and continues to feel.

12. Mr. O'Malley additionally brings this lawsuit to recover for the emotional and physical suffering he endured due to the predatory, intentional and unlawful sexual actions of Pedone directed at him and make sure no other child is forced to suffer the abuse and physical and mental trauma he felt and continues to feel.

## PARTIES

13. At all times herein mentioned, Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** was a not for profit corporation incorporated in the State of New York and by virtue of the laws of the State of New York.

14. At all times herein mentioned, Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** was located at 310 Prospect Park West, Brooklyn, New York 11215.

15. At all times herein mentioned, Father Joseph Foley was a priest operating under the direction and control of Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK**, and its agents, servants and/or employees.

16. At all times herein mentioned, Defendant **FRANK PEDONE** was a scout master operating under the direction and control of Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK**, and its agents, servants and/or employees.

17. At all times herein mentioned, Father Joseph Foley was an agent, servant and/or employee of Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK**.

18. At all times herein mentioned, Defendant **FRANK PEDONE** was an agent, servant and/or employee of Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK**.

FILED: KINGS COUNTY CLERK 01/21/2020 09:17 PM
NYSCEF DOC. NO. 33    Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 70 of 95

INDEX NO. 518178/2019
RECEIVED NYSCEF: 01/22/2020

19.   At all times herein mentioned, Defendant **CHURCH OF THE HOLY INNOCENTS** was a not for profit corporation incorporated in the State of New York and by virtue of the laws of the State of New York.

20.   At all times herein mentioned, Defendant **CHURCH OF THE HOLY INNOCENTS** was located at 279 E 17th St, Brooklyn, NY 11226.

21.   At all times herein mentioned, Father Joseph Foley was a priest operating under the direction and control of Defendant **CHURCH OF THE HOLY INNOCENTS**, and its agents, servants and/or employees.

22.   At all times herein mentioned, Defendant **FRANK PEDONE** was a scout master operating under the direction and control of Defendant **CHURCH OF THE HOLY INNOCENTS**, and its agents, servants and/or employees.

23.   At all times herein mentioned, Father Joseph Foley was an agent, servant and/or employee of Defendant **CHURCH OF THE HOLY INNOCENTS.**

24.   At all times herein mentioned, Defendant **FRANK PEDONE** was an agent, servant and/or employee of Defendant **CHURCH OF THE HOLY INNOCENTS.**

25.   At all times herein mentioned, Plaintiff was a young boy enrolled in a **BOY SCOUTS OF AMERICA** scouting program, specifically Troop #256.

26.   At all relevant times, Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** was a not for profit corporation incorporated in New York corporation that at all relevant times was an agent of Defendant **BOY SCOUTS OF AMERICA** subject to Defendant **BOY SCOUTS OF AMERICA**'s control or right to control. As Defendant **BOY SCOUTS OF AMERICA**'s agent, Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** controlled or had

the right to control local Boy Scout troops, including Plaintiff's troop (Troop #366), and chartering organizations of such troops, including Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** and/or **CHURCH OF THE HOLY INNOCENTS**.

27. At all times herein mentioned, Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** was located at 475 Riverside Drive, Suite 600 New York, NY 10115.

28. At all times herein mentioned, Defendant **ALPINE SCOUT CAMP** was a not for profit corporation incorporated in the State of New Jersey and by virtue of the laws of the State of New Jersey.

29. At all times herein mentioned, Defendant **ALPINE SCOUT CAMP** was located at 441 Rte. 9W, Alpine, NJ 07620.

30. At all times herein mentioned, Father Joseph Foley was a priest operating under the direction and control of Defendant **ALPINE SCOUT CAMP**, and its agents, servants and/or employees.

31. At all times herein mentioned, Defendant **FRANK PEDONE** was a scout master operating under the direction and control of Defendant **ALPINE SCOUT CAMP**, and its agents, servants and/or employees.

32. At all times herein mentioned, Father Joseph Foley was an agent, servant and/or employee of Defendant **ALPINE SCOUT CAMP**

33. At all times herein mentioned, Defendant **FRANK PEDONE** was an agent, servant and/or employee of Defendant **ALPINE SCOUT CAMP.**

34.    At all times herein mentioned, Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP** were agents, servants, employees and/or alter egos of each other.

## FACTS OF THE CASE

35.    Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP**'s negligence and recklessness caused Defendant **FRANK PEDONE** to have access to children, including on Diocese and/or camp premises, despite their knowledge that Defendant **FRANK PEDONE** sexually abused children and/or had the propensity to sexually abuse children and therefore are responsible for the injuries that Plaintiff incurred because but for Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP**'s negligence, Plaintiff would not have suffered the mental and physical anguish inflicted by defendant **FRANK PEDONE**. Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP**'s gross negligence, reckless, wanton, and/or willful conduct supports punitive liability.

36. Defendant **FRANK PEDONE** sexually assaulted Mr. O'Malley while Mr. O'Malley was a young boy scout at Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP** on their premises. The Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP** failed to remove Defendant **FRANK PEDONE** from his position as a scout master or to take any steps to keep the dangerous predator away from the young men of the camp.

37. In approximately 1968 and continuing through approximately 1970, Mr. O'Malley was a member of the Holy Innocents Troop Number 366 of the Boy Scouts ("the Troop").

38. In or about 1968 and continuing until approximately 1970, Defendant **FRANK PEDONE**, repeatedly and forcefully forced Mr. O'Malley to kiss him and engage in oral sex with him.

39. Mr. O'Malley reported the sexual abuse to Father Joseph Foley of the Church of the Holy Innocents.

40. Mr. O'Malley's Boy Scout troop was associated with the Church of the Holy Innocents.

41. Mr. O'Malley and/or other members of the Troop reported the abuse to the assistant troop masters.

42.   Neither Father Foley nor the assistant troop masters took any steps to remove Pedone from his position of power and authority in the troop, church or community and continued to allow him unfettered access to the children of the community.

43.   The Boy Scouts of America claims to be "a program for young people that builds character, trains them in responsibilities of participating citizenship and develops personal fitness", however, Plaintiff's experience with the Boy Scouts operated by Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP** proved to be a forum for the open sexual exploitation of young boys at the hands of adults.

44.   As a result of the actions of Defendant **FRANK PEDONE**, Mr. O'Malley felt and continues to feel ashamed and humiliated.

45.   As such, Plaintiff suffered catastrophic and lifelong injuries as a result of Defendants **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and **ALPINE SCOUT CAMP**'s negligence in undertaking a duty to keep its young child participants, of its camp(s) and/or parishes safe from predators and failing to act in accord with that duty by allowing Defendant **FRANK PEDONE**, a known predator, to continue his role where he would continue to have the opportunity to prey on children and/or failed to adequately supervise Defendant **FRANK PEDONE** after allowing Defendant **FRANK PEDONE** to continue to have his position of authority and power.

## AS AND FOR A FIRST CAUSE OF ACTION FOR NEGLIGENCE
## AS FOR THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK

46.   Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 45., inclusive, with the same force and effect as if hereinafter set forth at length.

47.   At all times mentioned herein, defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** owed a duty of care to keep the young boy participants of the boy scouts safe from sexual abuse by its Scout Masters and/or other adult employees under its control that ultimately befell the Plaintiff, as the Diocese's agents, servants and/or employees were specifically told about the abuse and failed to act.

48.   At all times mentioned herein, defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** and/or its agents, servants and/or employees breached the above-stated duty in a negligent, reckless, willful and wanton manner, and caused Plaintiff to be sexually assaulted.

49.   As a result of the negligence of defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** and/or its agents, servants and/or employees, plaintiffs were caused serious personal injuries, emotional distress, mental pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

50.   By reason of the foregoing, Plaintiff is entitled to compensatory damages from defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** in such sums as a jury would find fair, just and adequate.

51.    By reason of the foregoing, Plaintiff is entitled to punitive damages from defendant **THE**

**ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** in such sums as a

jury would find fair, just and adequate.

52.    The amount of damages sought exceeds the jurisdiction of all lower courts which would

otherwise have jurisdiction.

53.    This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A SECOND CAUSE OF ACTION FOR
### NEGLIGENCE AS FOR CHURCH OF THE HOLY INNOCENTS

54.    Plaintiff repeats, reiterates and realleges each and every allegation contained in those

paragraphs of this Complaint marked and designated 1. through 53., inclusive, with the

same force and effect as if hereinafter set forth at length.

55.    At all times mentioned herein, defendant **CHURCH OF THE HOLY INNOCENTS**

owed a duty of care, including but not limited to in locis parentis, to keep the young boy

participants of the boy scouts safe from sexual abuse by its Scout Masters and/or other

adult employees under its control that ultimately befell the Plaintiff, as the Church's

agents, servants and/or employees were specifically told about the abuse and failed to act.

56.    At all times mentioned herein, defendant **CHURCH OF THE HOLY INNOCENTS**

and/or its agents, servants and/or employees breached the above-stated duty in a

negligent, reckless, willful and wanton manner, and caused Plaintiff to be sexually

assaulted.

57.    As a result of the negligence of defendant **CHURCH OF THE HOLY INNOCENTS**

and/or its agents, servants and/or employees, plaintiffs were caused serious personal

injuries, emotional distress, mental pain and suffering, mental anguish and/or physical

manifestations thereof, and other losses, all of which have not as of yet been ascertained.

58. By reason of the foregoing, Plaintiff is entitled to compensatory damages from defendant **CHURCH OF THE HOLY INNOCENTS** in such sums as a jury would find fair, just and adequate.

59. By reason of the foregoing, Plaintiff is entitled to punitive damages from defendant **CHURCH OF THE HOLY INNOCENTS** in such sums as a jury would find fair, just and adequate.

60. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

61. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A THIRD CAUSE OF ACTION FOR
### NEGLIGENCE FOR BOY SCOUTS OF AMERICA

62. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 61., inclusive, with the same force and effect as if hereinafter set forth at length.

63. At all times mentioned herein, Defendant **BOY SCOUTS OF AMERICA** owed a duty of care, including but not limited to in locis parentis, to keep the young boy participants of the Boy Scouts, including Plaintiff, safe from sexual abuse by its scoutmasters and/or other adult employees under its supervision and control, including on company premises, that ultimately befell the Plaintiff, and they had a duty to supervise **FRANK PEDONE**.

64. At all times mentioned herein, Defendant **BOY SCOUTS OF AMERICA** and/or its agents, servants and/or employees breached the above-stated duty in a negligent, reckless, willful and wanton manner, and caused Plaintiff to be sexually assaulted.

65. As a result of the negligence of Defendant **BOY SCOUTS OF AMERICA** and/or its agents, servants and/or employees, Plaintiff was caused serious personal injuries,

emotional distress, mental pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

66. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant **BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

67. By reason of the foregoing, Plaintiff is also entitled to punitive damages from Defendant **BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

68. The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction.

69. This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR NEGLIGENCE AS FOR GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA

70. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 69., inclusive, with the same force and effect as if hereinafter set forth at length.

71. At all times mentioned herein, defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** owed a duty of care, including but not limited to in locis parentis, to keep the young boy participants of the boy scouts safe from sexual abuse by its Scout Masters and/or other adult employees under its supervision and control, including on company premises, that ultimately befell the Plaintiff, and they had a duty to supervise Defendant **FRANK PEDONE**.

72. At all times mentioned herein, defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and/or its agents, servants and/or employees

breached the above-stated duty in a negligent, reckless, willful and wanton manner, and caused Plaintiff to be sexually assaulted.

73. As a result of the negligence of defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and/or its agents, servants and/or employees, plaintiffs were caused serious personal injuries, emotional distress, mental pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

74. By reason of the foregoing, Plaintiff is entitled to compensatory damages from defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

75. By reason of the foregoing, Plaintiff is entitled to punitive damages from defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

76. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

77. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A FIFTH CAUSE OF ACTION
### FOR NEGLIGENCE AS FOR ALPINE SCOUT CAMP

78. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 77., inclusive, with the same force and effect as if hereinafter set forth at length.

79. At all times mentioned herein, defendant **ALPINE SCOUT CAMP** owed a duty of care, including but not limited to in locis parentis, to keep the young boy participants of the

boy scouts safe from sexual abuse by its Scout Masters and/or other adult employees under its supervision and control that ultimately befell the Plaintiff.

80. At all times mentioned herein, defendant **ALPINE SCOUT CAMP** and/or its agents, servants and/or employees breached the above-stated duty in a negligent, reckless, willful and wanton manner, and caused Plaintiff to be sexually assaulted.

81. As a result of the negligence of defendant **ALPINE SCOUT CAMP** and/or its agents, servants and/or employees, plaintiffs were caused serious personal injuries, emotional distress, mental pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

82. By reason of the foregoing, Plaintiff is entitled to compensatory damages from defendant **ALPINE SCOUT CAMP** in such sums as a jury would find fair, just and adequate.

83. By reason of the foregoing, Plaintiff is entitled to punitive damages from defendant **ALPINE SCOUT CAMP** in such sums as a jury would find fair, just and adequate.

84. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

85. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AS FOR THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK

86. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 85., inclusive, with the same force and effect as if hereinafter set forth at length.

87.  Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK,** had a duty to supervise and prevent known risks of harm to the children of its camps by its Scout Masters.

88.  Defendant was negligent in hiring, retaining and supervising their personnel, such as Father Foley, who was careless, unskillful, negligent, reckless and acted in a willful and wanton manner in not possessing the requisite knowledge and skill of a priest who should have properly been supervising the Scout Masters to ensure the safety of the children participants of the boy scouts.

89.  Defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** knew or should have known Defendant **FRANK PEDONE** sexually abused and/or had the propensity to sexually abuse children and did nothing to stop it.

90.  As a result of such negligent hiring, supervising and retention, Plaintiff was caused to suffer serious personal injuries, emotional distress, conscious pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

91.  By reason of the foregoing, Plaintiff is entitled to compensatory damages from defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** in such sums as a jury would find fair, just and adequate.

92.  By reason of the foregoing, Plaintiff is entitled to punitive damages from defendant **THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK** in such sums as a jury would find fair, just and adequate.

93.  The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

94.    This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AS FOR CHURCH OF THE HOLY INNOCENTS

95.    Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 94., inclusive, with the same force and effect as if hereinafter set forth at length.

96.    Defendant **CHURCH OF THE HOLY INNOCENTS**, had a duty to supervise and prevent known risks of harm to the children of its camps by its Scout Masters.

97.    Defendant was negligent in hiring, retaining and supervising their personnel, such as Father Foley, who was careless, unskillful, negligent, reckless and acted in a willful and wanton manner in not possessing the requisite knowledge and skill of a priest who should have properly been supervising the Scout Masters to ensure the safety of the children participants of the boy scouts.

98.    Defendant **CHURCH OF THE HOLY INNOCENTS** knew or should have known Defendant **FRANK PEDONE** sexually abused and/or had the propensity to sexually abuse children and did nothing to stop it.

99.    As a result of such negligent hiring, supervising and retention, Plaintiff was caused to suffer serious personal injuries, emotional distress, conscious pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

100.  By reason of the foregoing, Plaintiff is entitled to compensatory damages from defendant **CHURCH OF THE HOLY INNOCENTS** in such sums as a jury would find fair, just and adequate.

101. By reason of the foregoing, Plaintiff is entitled to punitive damages from defendant **CHURCH OF THE HOLY INNOCENTS** in such sums as a jury would find fair, just and adequate.

102. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

103. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR AN EIGHTH CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AS TO BOY SCOUTS OF AMERICA

104. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 103., inclusive, with the same force and effect as if hereinafter set froth at length.

105. Defendant **BOY SCOUTS OF AMERICA** had a duty to supervise and prevent known risks of harm to the young boy participants, including Plaintiff, in scouting activities by its scoutmasters.

106. Defendant **BOY SCOUTS OF AMERICA** was negligent in hiring, retaining and supervising their personnel, such as defendant **FRANK PEDONE**, who were careless, unskillful, negligent, reckless and acted in a willful and wanton manner in not possessing the requisite knowledge and skill of scoutmasters and other troop supervisors who should have properly been supervising the scoutmasters to ensure the safety of the children of their troops, including Plaintiff..

107. Defendant **BOY SCOUTS OF AMERICA** knew or should have known **FRANK PEDONE** sexually abused and/or had the propensity to sexually abuse children, including Plaintiff, and did nothing to stop it.

108. As a result of such negligent hiring, supervising and retention, Plaintiff was caused to suffer serious personal injuries, emotional distress, conscious pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

109. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant **BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

110. By reason of the foregoing, Plaintiff is also entitled to punitive damages from Defendant **BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

111. The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction.

112. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A NINTH CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AS FOR GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA

113. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 112., inclusive, with the same force and effect as if hereinafter set forth at length.

114. Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA**, had a duty to supervise and prevent known risks of harm to the young boy participants in the boy scouts by its Scout Masters.

115. Defendant was negligent in hiring, retaining and supervising their personnel, such as Defendant **FRANK PEDONE**, who were careless, unskillful, negligent, reckless and

acted in a willful and wanton manner in not possessing the requisite knowledge and skill of Scout Masters and other troop supervisors who should have properly been supervising the Scout Masters to ensure the safety of the children of the boy scout troops.

116. Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** knew or should have known Defendant **FRANK PEDONE** sexually abused and/or had the propensity to sexually abuse children and did nothing to stop it.

117. As a result of such negligent hiring, supervising and retention, Plaintiff was caused to suffer serious personal injuries, emotional distress, conscious pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

118. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

119. By reason of the foregoing, Plaintiff is entitled to punitive damages from Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

120. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

121. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A TENTH CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AS FOR ALPINE SCOUT CAMP

122. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 121., inclusive, with the same force and effect as if hereinafter set forth at length.

123. Defendant **ALPINE SCOUT CAMP**, had a duty to supervise and prevent known risks of harm to the children of its camps by its Scout Masters.

124. Defendant was negligent in hiring, retaining and supervising their personnel, such as Defendant **FRANK PEDONE**, who were careless, unskillful, negligent, reckless and acted in a willful and wanton manner in not possessing the requisite knowledge and skill of Scout Masters and other troop supervisors who should have properly been supervising the Scout Masters to ensure the safety of the children participants of the boy scouts.

125. Defendant **ALPINE SCOUT CAMP** knew or should have known Defendant **FRANK PEDONE** sexually abused and/or had the propensity to sexually abuse children and did nothing to stop it.

126. As a result of such negligent hiring, supervising and retention, Plaintiff was caused to suffer serious personal injuries, emotional distress, conscious pain and suffering, mental anguish and/or physical manifestations thereof, and other losses, all of which have not as of yet been ascertained.

127. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant **ALPINE SCOUT CAMP** in such sums as a jury would find fair, just and adequate.

128. By reason of the foregoing, Plaintiff is entitled to punitive damages from Defendant **ALPINE SCOUT CAMP** in such sums as a jury would find fair, just and adequate.

129. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

130. This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS FOR BOY SCOUTS OF AMERICA

131. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 130., inclusive, with the same force and effect as if herein set forth at length.

132. Defendant **BOY SCOUTS OF AMERICA** and their agents, servants and/or employees, knew or reasonably should have known that the failure to properly advise, supervise and hire **FRANK PEDONE**, the scoutmaster who sexually abused Plaintiff, would and did proximately result in physical and emotional distress to Plaintiff.

133. Defendant **BOY SCOUTS OF AMERICA** and their agents, servants and/or employees knew or reasonably should have known that the sexual abuse and other improper conduct would and did proximately result in physical and emotional distress to Plaintiff.

134. Defendant **BOY SCOUTS OF AMERICA** had the power, ability, authority and duty to intervene with and/or stop the improper conduct that resulted in Plaintiff being sexually abused by **FRANK PEDONE**.

135. Despite said knowledge, power and duty, Defendant **BOY SCOUTS OF AMERICA** negligently failed to act so as to stop, prevent, and prohibit the improper conduct that resulted in **FRANK PEDONE** sexually abusing Plaintiff.

136. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant **BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

137. By reason of the foregoing, Plaintiff is also entitled to punitive damages from Defendant **BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

138. The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction.

139. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A TWELFTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS FOR GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA

140. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 139., inclusive, with the same force and effect as if herein set forth at length.

141. Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and their agents, servants and/or employees, knew or reasonably should have known that the failure to properly advise, supervise and hire Defendant **FRANK PEDONE**, the Scout Master who sexually abused Plaintiff, would and did proximately result in physical and emotional distress to Plaintiff.

142. Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** and their agents, servants and/or employees knew or reasonably should have known that the sexual abuse and other improper conduct would and did proximately result in physical and emotional distress to Plaintiff.

143. Defendant has the power, ability, authority and duty to intervene with and/or stop the improper conduct that resulted in Plaintiff being sexually abused by Defendant **FRANK PEDONE**.

144. Despite said knowledge, power and duty, defendant negligently failed to act so as to stop, prevent, and prohibit the improper conduct that resulted in Defendant **FRANK PEDONE** sexually abusing Plaintiff.

145. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

146. By reason of the foregoing, Plaintiff is entitled to punitive damages from Defendant **GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA** in such sums as a jury would find fair, just and adequate.

147. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

148. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS FOR ALPINE SCOUT CAMP

149. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 148., inclusive, with the same force and effect as if herein set forth at length.

150. Defendant **ALPINE SCOUT CAMP** and their agents, servants and/or employees, knew or reasonably should have known that the failure to properly advise, supervise and hire Defendant **FRANK PEDONE**, the Scout Master who sexually abused Plaintiff, would and did proximately result in physical and emotional distress to Plaintiff.

151. Defendant **ALPINE SCOUT CAMP** and their agents, servants and/or employees knew or reasonably should have known that the sexual abuse and other improper conduct would and did proximately result in physical and emotional distress to Plaintiff.

152. Defendant has the power, ability, authority and duty to intervene with and/or stop the improper conduct that resulted in Plaintiff being sexually abused by Defendant **FRANK PEDONE**.

153. Despite said knowledge, power and duty, defendant negligently failed to act so as to stop, prevent, and prohibit the improper conduct that resulted in Defendant **FRANK PEDONE** sexually abusing Plaintiff.

154. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Defendant **ALPINE SCOUT CAMP** in such sums as a jury would find fair, just and adequate.

155. By reason of the foregoing, Plaintiff is entitled to punitive damages from Defendant **ALPINE SCOUT CAMP** in such sums as a jury would find fair, just and adequate.

156. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

157. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A FOURTEENTH CAUSE OF
### ACTION FOR ASSAULT AS FOR FRANK PEDONE

158. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 157., inclusive, with the same force and effect as if herein set forth at length.

159. Defendant **FRANK PEDONE** predatory, abusive, manipulative and unlawful acts against Plaintiff, created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to plaintiff's person, all of which were done intentionally by Defendant **FRANK PEDONE** to plaintiff without plaintiff's consent.

160. As a direct and proximate result of the aforementioned assault, Plaintiff has sustained in the past, and will continue to sustain in the future, serious and severe psychological injuries and emotional distress, mental anguish, embarrassment and humiliation.

161. As a direct and proximate result of the aforementioned assaults, plaintiff has incurred medical expenses and other economic damages, and will now be obligated to expend

sums of money for medical care and attention in effort to cure himself of his injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

162. By reason of the foregoing, plaintiff is entitled to compensatory damages from Defendant **FRANK PEDONE** in such sums a jury would find fair, just and adequate, and the plaintiff, Plaintiff, is further entitled to punitive and exemplary damages from Defendant **FRANK PEDONE** in such sums as a jury would find fair, just and appropriate to deter said defendant and others from future similar misconduct.

163. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

164. This action falls within exceptions to Article 16 of the C.P.L.R.

## AS AND FOR A FIFTEENTH CAUSE OF
## ACTION FOR BATTERY AS FOR FRANK PEDONE

165. Plaintiff repeats, reiterates and realleges each and every allegation contained in those paragraphs of this Complaint marked and designated 1. through 164., inclusive, with the same force and effect as if herein set forth at length.

166. When Plaintiff was approximately eleven years old, Defendant **FRANK PEDONE** intentionally and unlawfully sexually abused him forcing plaintiff to engage in oral sex with him without plaintiff's consent.

167. Defendant **FRANK PEDONE's** unlawful, abusive, manipulative, and predatory acts against plaintiff, amounted to a series of harmful and offensive contacts to plaintiff's person all of which were done intentionally by defendant to plaintiff without plaintiff's consent.

168. As a direct and proximate result of the aforementioned batteries, Plaintiff has sustained in the past, and will continue to sustain in the future, psychological injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment and humiliation.

169. By reason of the foregoing, plaintiff is entitled to compensatory damages from Defendant **FRANK PEDONE** in such sums a jury would find fair, just and adequate, and plaintiff is further entitled to punitive and exemplary damages from Defendant **FRANK PEDONE** in such sums as a jury would find fair, just and appropriate to deter said defendant and others from future similar misconduct.

170. The amount of damages sought exceeds the jurisdiction of all lower courts which would otherwise have jurisdiction.

171. This action falls within exceptions to Article 16 of the C.P.L.R.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS FOR FRANK PEDONE

172. Plaintiff repeats reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and designated 1. through 171., inclusive, with the same force and effect as if hereafter set forth at length.

173. Defendant **FRANK PEDONE** engaged in outrageous conduct towards plaintiff with the intention to cause, or with reckless disregard for the probability of causing, plaintiff to suffer severe emotional distress by sexually assaulting him while he was a child under Pedone's supervision and control.

174. As a proximate result of the aforementioned assaults, batteries, and other violations committed against Plaintiff, he has suffered and continues to suffer extreme mental

Case 20-50527-LSS    Doc 112-1    Filed 11/05/20    Page 93 of 95

distress, humiliation, anguish, and emotional and physical injuries, as well as economic

losses, all her damage in amounts to be proven at trial.

175. Defendant **FRANK PEDONE** committed the acts alleged herein maliciously,

fraudulently, and oppressively with the wrongful intention of injuring plaintiff from an

improper and evil motive amounting to malice and in conscious disregard of plaintiff's

rights, entitling plaintiff to recover punitive damages in amounts to be proven at trial.

176. By reason of the foregoing, plaintiff is entitled to compensatory damages from Defendant

**FRANK PEDONE** in such sums a jury would find fair, just and adequate, and plaintiff is

further entitled to punitive and exemplary damages from Defendant **FRANK PEDONE**

in such sums as a jury would find fair, just and appropriate to deter said defendant and

others from future similar misconduct.

177. The amount of damages sought exceeds the jurisdiction of all lower courts which would

otherwise have jurisdiction.

178. This action falls within the exceptions to Article 16 of the C.P.L.R.

**WHEREFORE**, Plaintiff demands judgement against Defendants in such sum as a jury

would find fair, adequate and just.

Dated: New York, New York
     January 22, 2020

                                MERSON LAW, PLLC

                   By: _____
                                Jordan K. Merson
                                Attorneys for Plaintiff
                                150 East 58th Street, 34th Floor
                                New York, New York 10155
                                (212) 603-9100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

MICHAEL O'MALLEY,

*Plaintiff*,

Index No.: **518178/2019**

-against-

**THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW YORK, CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS OF AMERICA, GREATER NEW YORK COUNCIL OF THE BOY SCOUTS OF AMERICA, ALPINE SCOUT CAMP and FRANK PEDONE,**

**ATTORNEY
VERIFICATION**

*Defendants*.

-------------------------------------------------------------------X

**JORDAN K. MERSON, ESQ.**, an attorney duly admitted to practice in the Courts

of New York State, and a member of the firm **MERSON LAW, PLLC**, attorneys for the

Plaintiff in the within action, hereby affirms under penalty of perjury:

That he has read the within Amended Verified Complaint and knows the contents

thereof, and that the same is true to his own knowledge, except as to the matters therein stated

to be alleged upon information and belief, and that as to those matters he believes it to be true;

That the sources of his information and knowledge are investigations and records in the

file; and,

That the reason he makes this verification as opposed to the Plaintiff is that the Plaintiff

is not within the County where the he has his office.

Dated: New York, New York
       January 22, 2020

_____
JORDAN K. MERSON

Index No. 518178                                    Year 2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

MICHAEL O'MALLEY,

*Plaintiff,*

-against-

THE ROMAN CATHOLIC DIOCESE OF BROOKLYN, NEW
YORK CHURCH OF THE HOLY INNOCENTS, BOY SCOUTS
OF AMERICA, GREATER NEW YORK COUNCIL OF THE
BOY SCOUTS OF AMERICA, ALPINE SCOUT CAMP and
FRANK PEDONE,

*Defendants.*

## AMENDED VERIFIED COMPLAINT

Merson Law, PLLC

*Attorneys for Plaintiff*

*Office and Post Office Address, Telephone*
150 East 58th Street, 34th Floor
New York, New York 10155
(212) 603-9100

To:   All Parties