## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>          Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |
| BOY SCOUTS OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>A.A., *et al.*,<br><br>          Defendants. | Adv. Pro. No. 20-50527 (LSS)<br><br>**Adv. D.I.  6, 54, 72, 77, 107, 109, 110, 111, 116, 122** |

**REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION TO ALLOW MOVANTS TO PROCEED WITH STATE COURT ACTIONS AS TO NON-DEBTOR DEFENDANTS**

# **TABLE OF CONTENTS**

ARGUMENT……………………………………………………………………………1

 CONCLUSION……………………………………………………………………….4

## **TABLE OF AUTHORITIES**

*A & A Sign Company v. Maughan,*
 419 F.2d 1152, 1155 (9th Cir. 1969) ...................................................................... 1

*Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co.*,
54 B.R. 353, 361 (Bankr. W.D. Wis. 1985) ............................................................ 1

*John Simmons Co. v. Grier Bros. Co.,*
258 U.S. 82, 88 (1922) ............................................................................................ 1

Movants respectfully submit this reply brief in support of their Motion for Order Modifying Preliminary Injunction to Allow Movants to Proceed With State Court Actions As to Non-Debtor Defendants (the "Motion")[1], and, state as follows:

## ARGUMENT

1. This is not an attempt to relitigate the preliminary injunction as BSA suggests. The Termination Date of the Consent Order has been further extended to March 19, 2021 pursuant to the Order Approving Third Stipulation entered on November 18, 2020 [Adv. D.I. 116]. Movants, as sexual abuse victims, are now being further precluded from pursuing their claims against the Non-Debtor Defendants based on conduct separate from conduct related to and/or claims against the BSA. While circumstances related to the Debtors' bankruptcy cases have not changed *per se*, Catholic Diocese bankruptcies are on the rise, and news that many are struggling financially has increased since the issuance of the preliminary injunction.[2] It is inequitable to leave the preliminary injunction in place and this Court should exercise its discretion and modify the Consent Order to allow movants to proceed with the State Court Actions as to the Non-Debtor Defendants only. *See A & A Sign Company v. Maughan,* 419 F.2d 1152, 1155 (9th Cir. 1969); *John Simmons Co. v. Grier Bros. Co.,* 258 U.S. 82, 88 (1922).[3],[4]

2. The allegations against the defendants in each of the State Court Complaints do not "inescapably overlap" so that Movants cannot proceed against the Non-Debtor Defendants without

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion and Boy Scouts of America's Brief In Opposition To Motion For Order Modifying Preliminary Injunction To Allow Movants To Proceed With State Court Actions As To Non-Debtor Defendants (the "Debtors' Response").

[2] The Roman Catholic Church of the Archdiocese of New Orleans filed for bankruptcy protection on May 1, 2020 in the United States Bankruptcy Court for the Eastern District of Louisiana, Case No. 20-10846 and the Diocese of Rockville Centre filed for bankruptcy on October 1, 2020 in the United States Bankruptcy Court for the Southern District of New York.

[3] To the extent required, Movants intend to file motions to sever in the State Court Actions.

[4] It is Debtors' burden to prove that the preliminary injunction should remain in effect. *See Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co.,* 54 B.R. 353, 361 (Bankr. W.D. Wis. 1985) ("[s]ince a preliminary injunction under 11 U.S.C. § 105 is an extraordinary remedy which reaches matters not covered by the automatic stay of section 362 it is even more appropriate that the party opposing relief from the injunction should bear the burden of proof as to the propriety of leaving the preliminary injunction in effect."). Debtors have not met that burden.

impacting the BSA and the Debtors' reorganization.  Nor is it correct that the accused abusers acted solely in their role as a church-affiliated troop.  Debtors' Response, ¶46.

3. Each of the State Court Complaints sufficiently allege and demonstrate the separate roles each accused abuser played between the church and school or youth programs, and the accused abuser's separate role as a Scoutmaster for scout activities.  Debtors ignore this distinction.

      i.    **State Court Action No. 1 (M.R. Action)**

4. The Complaint in State Court Action No. 1 (the "<u>M.R. Complaint</u>") alleges that the DIOCESE OF BROOKLYN owned, operated, supervised, controlled, and maintained the ST. BENEDICT JOSEPH LABRE CHURCH. In turn, the ST. BENEDICT JOSEPH LABRE CHURCH owned, operated, supervised, controlled, and maintained the ST. BENEDICT JOSEPH LABRE SCHOOL.  M.R. Complaint, ¶¶28-49.

5. The M.R. Complaint further alleges that Grace was affiliated with "ST. BENEDICT JOSEPH LABRE CHURCH and ST. BENEDICT JOSEPH LABRE SCHOOL, as well as their CYO Sports programs in several capacities including as a coach" and that DIOCESE OF BROOKLYN, ST. BENEDICT JOSEPH LABRE CHURCH, and ST. BENEDICT JOSEPH LABRE SCHOOL, had the ability and the authority to control the activities of [Grace] in his capacity as a CYO coach. M.R. Complaint, ¶¶62-63.

6. The M.R. Complaint further alleges Plaintiff M.R. participated in the church and school defendants CYO sports program, and Grace gained access to and sexually abused plaintiff M.R. in that context, as well as in his capacity as a Eucharistic Minister.

7. While Grace also was a Scoutmaster and gained access to and sexually abused M.R. in that role, such abuse and the allegations and causes of action related thereto as separate and apart from those actions of abuse in his role as a Eucharistic Minister and coach.  There is no allegation and Debtors have not contended that Scouting activities occurred during the church and CYO sports program. Moreover, the claims against the church and school for the hiring of Grace in his role as minister and

2

coach are separate than any allegations related to Grace's role as Scoutmaster.

        **ii.**        **State Court Action No. 2 (N.P. Action)**

8.        The issues raised to the Complaint in State Court Action No. 2 (the "N.P. Complaint") and allegations cited by Debtors in their response brief are a red herring. Any allegations of "conspiring" in the Complaint do not make litigation against the BSA and the Non-Debtor Defendants "impossible to litigate separately" as there is no cause of action for conspiracy. Moreover, any allegations regarding BSA "'operating or controlling" the premises of St. Demetrios Greek, Orthodox Church and St. Demetrios N.Y. Day School do not "directly entwine" the BSA and the Non-Debtor Defendants No. 2. The claims against Non-Debtor Defendants No. 2 arise not only from certain Boy Scout programs and Svrcek's position as a Scoutmaster, **but also separately** arising from his position as a teacher, and other alleged abuser teachers, at St. Demetrios N.Y. Day School created by the Greek Archdiocese and operated by St. Demetrios.

        **iii.**        **State Court Action No. 3 (O' Malley Action)**

9.        The Complaint filed in State Court Action No. 3 alleges sixteen (16) causes of action. The First, Second, Fifth through Seventh, Tenth, and Thirteenth through Sixteenth Causes of Action are separate and distinguishable against each of the non-debtor defendants The Roman Catholic Diocese of, New York, Church of the Holy Innocents, Alpine Scout Camp and Frank Pedone. While these causes of action arise from Pedone's role as a Scoutmaster, the causes of action set forth above are separate from those against BSA directly and relate to the acts and omissions of the Non-Debtor Defendants No.3 and not the BSA.

10.        While Movants appreciate that Debtors' are engaged in the mediation process and have conducted extensive discovery in relation to that process, that is the nature of a complex Chapter 11 case. Generalized statements about the "adverse impact" on this process are not sufficient. It is mid-December and Debtors assert that there is an aggressive schedule of negotiations through January 2021. It is unclear how these negotiations will be impacted over the next several weeks if Movants proceed with the

State Court Actions as to the Non-Debtor Defendants.

11. Debtors' indemnification claim argument is also a red herring. Putting aside the viability of any claim for indemnity for liability on non-BSA related sexual abuse, it is also important to understand the practical import of any successful claim by a Diocese or Church for indemnification. Those claims are pre-petition unsecured claims. Those claims are the same priority of claims as Movants' sexual abuse claims—general unsecured claims. Thus, if the Movants are successful against any Diocese or Church, there is no harm or prejudice to the Debtors from indemnity: All that changes is the name of the holder of the unsecured claim.

## **CONCLUSION**

Movants respectfully request that the Motion be granted, and for any and all other such relief to which the Court may deem just and proper.

Dated: December 11, 2020
　　　Wilmington, Delaware

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

*/s/ Daniel K. Astin*
Daniel K. Astin (No. 4068)
1204 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
E-mail: dastin@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
(*Pro Hac Vice* Application forthcoming)
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com