# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| BOY SCOUTS OF AMERICA, | |
| Plaintiff, | Adv. Pro. No. 20-50527 (LSS) |
| v. | **Re: Adv. D.I.s 6, 54, 72, 77, 107, 116** |
| A.A., *et al*., | |
| Defendants. | |

## DECLARATION OF BRIAN WHITTMAN IN SUPPORT OF THE BSA'S MOTION TO EXTEND PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 362

I, Brian Whittman, pursuant to 11 U.S.C. § 1746, hereby declare as follows:

1. I am over twenty-one (21) years of age and I am fully competent to make this declaration. I am a Managing Director at Alvarez & Marsal North America, LLC ("**A&M**"), a limited liability corporation, which serves as restructuring advisor to the Boy Scouts of America (the "**BSA**"), the non-profit corporation that is, along with its affiliate Delaware BSA, LLC (together, the "**Debtors**"), a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). As the lead Managing Director at A&M responsible for the BSA

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

engagement since August 2019, I have had a lead role in connection with various aspects of these Chapter 11 Cases and in doing so have familiarized myself with a range of matters concerning the Debtors, including those described in this declaration. Except as otherwise stated in this declaration, all facts set forth herein are based on my personal knowledge and experience and my review of relevant documents.

2. I submit this declaration in support of *The BSA's Motion to Extend Preliminary Injunction Pursuant to 11 U.SC. §§ 105(a) and 362*.

A. **THE BSA RELATED PARTIES**

3. At present, there are approximately 252 Local Councils[2] across the country.

4. Over the course of these Chapter 11 Cases, the BSA has produced or helped facilitate the production of approximately 327,000 pages of documents to the TCC regarding the Local Councils' assets, the nature of restrictions thereon, and historical transactions.

5. The BSA Related Parties share insurance with the BSA as additional or named insureds under the BSA's policies. Numerous BSA Related Parties have filed proofs of claim for contribution and indemnity based on shared insurance or other asserted legal bases.

B. **THE PENDING ABUSE ACTIONS AND FURTHER ABUSE ACTIONS**

6. Based on my review of the latest-filed schedules to the Consent Order, there are, at present, approximately 860 Pending Abuse Actions and Further Abuse Actions pending in over 110 state and federal courts across the country. I understand that approximately 600 of those actions were instituted after the BSA filed the Preliminary Injunction Motion.

7. The BSA's own conduct and operations are at the core of the complaints in the Pending Abuse Actions and Further Abuse Actions. Moreover, in essentially all prepetition abuse

---

[2] Capitalized terms used but not defined herein have the meanings set forth in the *Opening Brief in Support of the BSA's Motion to Extend Preliminary Injunction Pursuant to 11 U.SC. §§ 105(a) and 362*.

actions, the BSA has been in charge of handling and coordinating the litigation on behalf of itself and the BSA Related Parties.

C.     **OVERVIEW OF THE MEDIATION PROCESS**

8.     Shortly after the Court appointed the Mediators, certain of the Insurers sought reconsideration of the Mediation Order, which the Court denied on July 14, 2020.  As a practical matter, the Mediation has only been up and running since the Bankruptcy Court denied the Insurers' motion for reconsideration of the Mediation Order.

9.     Twenty-two (22) parties are now actively participating in the Mediation, and at least two additional parties are in the process of being admitted to the Mediation.

10.    The Mediators have set an ambitious schedule for negotiations.  The complexity and sheer number of issues that must be addressed in connection with a global resolution cannot be understated.  The Debtors and the Mediators have been taking numerous steps, with the involvement of the other Mediation Parties, to address these issues as they engage in intensive negotiations regarding the structure and terms of a chapter 11 plan.  Both the Mediators and the Mediation Parties are hard at work under tremendous time pressure, as the BSA undertakes every effort to emerge from bankruptcy in the summer of this year.

11.    In addition, the BSA and its professionals have completed appraisals of more than 220 Local Council-owned properties and engaged in extensive discussions with Local Councils regarding the terms of their potential participation in a global resolution to be implemented through the BSA's chapter 11 plan.  The BSA has also cooperated with the TCC, which has appraised more than 400 additional Local Council-owned properties.

12.    The Debtors and their professionals have performed and continue to perform extensive analysis of the abuse claims filed as of the Bar Date and are actively engaged in negotiating a global resolution of those abuse claims, as further described below.

**D.     THE CLAIMS REVIEW PROCESS AND RELATED MEDIATION EFFORTS**

13.     The Debtors are committed to building consensus through mediated negotiations rather than value-destructive litigation.  However, those negotiations were not able to meaningfully progress in full until several weeks after the Bar Date, when the relevant parties obtained access to more comprehensive information regarding abuse claims.

14.     As of the Bar Date, claimants had filed approximately 95,000 abuse claims against the Debtors.

15.     Since the entry of the Third Stipulation, the BSA has, among other things, undertaken extensive analysis, with the assistance of its professionals, of the more than 95,000 abuse claims filed by the Bar Date, including leading numerous mediation sessions to present and discuss the results of that analysis.

16.     The Debtors, with the assistance of their advisors, have reviewed the Pending Abuse Actions and Further Abuse Actions filed under the legal name of the abuse survivor, and I understand that, based on my discussions with Debtors' counsel, it appears that virtually all of the plaintiffs in such actions have filed abuse proofs of claim.  Moreover, the attorneys in cases where the plaintiff used a "Doe" or equivalent pseudonym generally file claims on behalf of their clients, so it is reasonable to assume that the plaintiffs in those actions have also filed claims in the bankruptcy.

17.     In addition to the tens of thousands of abuse claims, more than 15,000 general proofs of claim were filed as of the Bar Date, which include more than 14,000 claims filed by Local Councils and Chartered Organizations for contribution and/or indemnity, based on shared insurance or other asserted legal rights, and the allegations against the BSA and BSA Related Parties in actions brought by abuse victims.

18.     Reviewing the large volume of highly sensitive and fact-specific abuse claims filed in these Chapter 11 Cases requires significant time and resources devoted to analysis.

19.     The Debtors and their professionals have made substantial progress in analyzing the claims, including a series of meetings between the Debtors' representatives, including their economic consultant, Bates White, and the Mediation Parties. These sessions have been ongoing since early January 2021 and are continuing during the week of this filing.

20.     Although substantial progress has been made toward achieving a global resolution of abuse claims and the Mediation Parties now have voluminous data regarding the abuse claims asserted in proofs of claim, significant additional work remains to be done to reach agreement upon the terms of a settlement with a critical mass of abuse survivors and other constituencies. Accordingly, it is as essential as ever that the attention of the Mediation Parties be undivided and free of unnecessary distraction.

21.     As described above, the Debtors have taken numerous productive steps in furtherance of a successful reorganization, despite various challenges, including additional hurdles imposed by the ongoing COVID-19 pandemic.

22.     The Debtors need continued breathing room to further analyze claims data, engage with their stakeholders in mediated plan negotiations, and prepare, file, and solicit a confirmable chapter 11 plan.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated:  February 22, 2021
        Highland Park, Illinois

                                        */s/ Brian Whittman*
                                        Managing Director
                                        ALVAREZ & MARSAL NORTH AMERICA, LLC